433 A.2d 896

WEST PENN ADMINISTRATION, INC., et al.

v.

PITTSBURGH NATIONAL BANK, a national banking association,

v.

The UNION NATIONAL BANK OF PITTSBURGH, a national banking association, McRandal Bros., Inc., a Pennsylvania corporation, Chrisal, Inc., a Pennsylvania corporation, A.J.A., Inc., a Pennsylvania corporation, and John F. Miller.

Appeal of WEST PENN ADMINISTRATION, INC. (at No. 82).

Appeal of PITTSBURGH NATIONAL BANK (at No. 86).

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed Aug. 7, 1981.

462

George E. McGrann, Pittsburgh, for West Penn, et al., appellants (at No. 82) and appellees (at No. 86).

Richard B. Tucker, III, Pittsburgh, for Pittsburgh National, appellant (at No. 86) and appellee (at No. 82).

Stephen A. George, Pittsburgh, for Union National, et al., appellees.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

PRICE, Judge:

This appeal arises out of an action in trespass and assumpsit brought to recover damages caused by an embezzlement. Appellants, West Penn Administration, Inc. and its constituent trustees, trusts and unincorporated associations [hereinafter West Penn], commenced this action on September 26, 1972, by filing a writ of summons against Pittsburgh Na-

tional Bank [hereinafter PNB]. West Penn filed a complaint on June 16, 1975 seeking to recover from PNB losses allegedly incurred through PNB's negligent payment of checks bearing PNB's forged indorsement. PNB asserted, *inter alia*, that West Penn lacked standing to institute this action. On May 21, 1979 PNB filed a motion for judgment on the pleadings based upon West Penn's alleged lack of standing, to which West Penn replied that it had acquired standing through an assignment. West Penn then filed a motion for judgment on the pleadings on Count I of its complaint, which sought recovery for twenty-one checks on which PNB was both the payee and the drawee. Following a hearing the trial court entered an order granting the motion of PNB and denying that of West Penn. On January 28, 1980, West Penn appealed the trial court's order.

Shortly after this action was commenced, PNB joined appellee The Union National Bank of Pittsburgh [hereinafter Union National], McRandal Brothers, Inc., Chrisal, Inc., A.J.A., Inc. and John F. Miller as additional defendants. PNB alleged that Union National was liable to PNB for any loss it sustained on the basis of Union National's neligent acceptance of the deposits and Union National's guarantee of prior indorsements. Union National then moved for summary judgment, contending that the action was barred by res judicata and collateral estoppel. Following a hearing Union National's motion was granted and PNB's appeal ensued. The appeals of West Penn and PNB have been consolidated for our review.

The following are the pertinent facts.[1] West Penn Administration, Inc. is a nonprofit corporation engaged in administering the pension and welfare trusts of the other appellants.[2] The trusts were established pursuant to collective bargaining agreements between certain employers in

---

1. The circumstances of this case are more fully set forth in *West Penn Administration, Inc. v. The Union National Bank of Pittsburgh*, 233 Pa.Super. 311, 335 A.2d 725 (1975).

2. West Penn's responsibilities included collecting and managing the employers' contributions to the funds.

the construction industry and union representatives. The agreements required the parties to periodically submit "Employer Contribution Reports" listing their employees and the benefits each employee had accrued during that period. Checks for the aggregate amount due for employee benefits were to accompany the reports. Approximately ninety per cent of the reports and checks were mailed directly to West Penn. West Penn would process the checks and then deposit them in one of the four employee contribution accounts it had established with PNB in 1964.[3] The remaining ten percent of the checks were mailed to PNB. PNB would deliver these checks to West Penn for processing prior to accepting them for deposit.

The procedures used by West Penn and PNB in accounting for the employer contribution checks enabled a West Penn account auditor and bookkeeper, John F. Miller, to divert one hundred and twenty-one of the checks to his own use. Commencing in October of 1969, when Miller received reports with accompanying checks he would take the check and stamp the report "Report Without Payment." For each report he then entered a false account receivable in the computer. He subsequently made a false journal voucher indicating that the dilatory payment had been received. The journal voucher was given to keypunchers who fed the information into the computer, erasing the account receivable from the data banks. Miller would then destroy the false journal voucher, type a false indorsement on the check and deposit the check in one of four accounts at Union National to which he had access.[4]

A Union National teller questioned the first check Miller presented for deposit. Miller told her that the check had

3. The four employer contribution accounts are: Carpenters Contribution Account, Laborers Contribution Account, Operating Engineers Contribution Account and Teamsters Contribution Account.

4. The employer contribution checks were made to the order of "Pittsburgh National Bank (Tradename) Contribution Account." Miller would type a forged indorsement on the obverse side of the checks, and add "For Deposit Only to a/c Union National Bank # [_____]."

been made out to the wrong payee. The teller consulted one of her supervisors for approval and then processed the check. The additional checks were accepted for deposit in a similar manner. Union National stamped all of the checks with its guarantee of prior indorsements and forwarded them to the drawee banks for payment. All of the drawees, including PNB who was both payee and drawee for twenty-one of the checks, paid the checks without question. Through this scheme Miller was able to withdraw the money and divert $444,527.57 to his personal use.

Soon after forging the initial indorsements Miller became ill and was absent from work for three months. During his absence, a chief officer of West Penn discovered a discrepancy in one of the falsified accounts and located the false journal voucher. West Penn failed to conduct an investigation, however, and the remainder of the forgeries passed undetected.

West Penn inadvertently learned of the fraud in February of 1970. Although he was not a suspect, Miller fled the state. He subsequently surrendered and pled guilty to criminal charges. Union National promptly garnished Miller's assets, recovering $390,187.20.

We were first presented with an action arising out of these transactions in *West Penn Administration, Inc. v. Union National Bank*, 233 Pa.Super. 311, 335 A.2d 725 (1975) [hereinafter *West Penn I*]. West Penn brought this earlier action against Union National to recover all of the fraudulently deposited funds. In that action we were obliged to initially determine who had standing to bring an action for recovery of the proceeds. West Penn contended that, as the trustee of the accounts, it was the payee and, therefore, had standing under § 3110(a)(5) of the Uniform Commercial Code [5] to bring an action to recover the funds. We found,

**5.** Act of Nov. 1, 1979, P.L. 255, Act No. 86, § 1, eff. Jan. 1, 1980. (13 Pa.C.S.A. § 3110(a)(5)) (originally enacted as Act of April 6, 1953, P.L. 3, § 3, eff. July 1, 1954) (subsequently reenacted as Act of Oct. 2, 1959, P.L. 1023, § 3, eff. Jan. 1, 1960). Section 3110(a)(5) provides:
(1) An instrument is payable to order when by its terms it is payable to the order or assigns of any person therein specified with

however, that the checks named PNB the unconditional payee and the additional words "(Tradename) Contribution Account" were of no significance in identifying the payee. Thus, under § 3117(3) of the Uniform Commercial Code, [6] PNB was the payee and, as such, PNB was the real party in interest. Accordingly, West Penn could proceed against Union National only through an assignment of PNB's claims.

We next addressed the question whether West Penn could, with PNB's assignment, assert the forgeries against Union National. We concluded that the evidence supported the trial court's finding that West Penn and PNB committed gross negligence that "substantially contributed" to the making of the forgeries. *West Penn I*, 233 Pa.Super. at 332, 335 A.2d at 733; 13 Pa. C.S.A. § 3406.[7] Therefore, PNB was

reasonable certainty, or to him or his order, or when it is conspicuously designated on its face as 'exchange' or the like and names a payee. It may be payable, to the order of ... (e) an estate, trust or fund, in which case it is payable to the order of the representative of such estate, trust or fund or his successors ...
13 Pa.C.S.A. § 3110(a)(5).

6. Section 3117(3) provides:
An instrument made payable to a named person with the addition of words describing him (a) as an agent or officer of a specified person is payable to his principal but the agent or officer may act as if he were the holder; (b) as any other fiduciary for a specified person or purpose is payable to the payee and may be negotiated, discharged or enforced by him; (c) in any other manner is payable to the payee unconditionally and the additional words are without effect on subsequent parties.
13 Pa.C.S.A. § 3117(3).

7. West Penn was negligent in its procedure of collecting and depositing the checks. PNB was negligent in implicitly ratifying its unauthorized signature and in its handling of checks to be deposited in contribution accounts.
Section 3406 provides:
Any person who by his negligence *substantially contributes* to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the business of the drawee or payor.
13 Pa.C.S.A. § 3406 (emphasis added).

estopped from denying the forgeries, and West Penn, as PNB's assignee, could not raise them.

We then determined that Union National had acted in accordance with reasonable business standards in accepting the checks for deposit. Accordingly, we affirmed the verdict limiting Union National's liability to those assets which Union National had successfully recovered through its fraudulent debtors attachment action.

West Penn instituted the instant case against PNB to regain those funds not recovered in *West Penn I.* West Penn's claim is grounded upon PNB's alleged negligent processing of all of the checks and upon PNB's alleged conversion of the twenty-one checks drawn on and payable to PNB. PNB contends that Union National became responsible for the twenty-one checks when it made its guarantees of prior indorsements. Moreover, PNB claims that the loss was caused by the negligence of West Penn and Union National.

The trial court first held that West Penn lacked standing to bring an action for the twenty-one checks, and accordingly, denied West Penn's motion seeking recovery of the proceeds. Second, the court held that West Penn was barred from proceeding on its negligence claim against PNB because West Penn had itself been found grossly negligent in the same transaction. Finally, the court held that PNB was precluded from proceeding against Union National on the basis of collateral estoppel. For the following reasons we affirm the orders of the court below.

■■■ We first address the trial court's grant of PNB's motion for judgment on the pleadings. "To determine the propriety of awarding judgment on the pleadings, we must ... [accept] as true all well-pleaded averments of fact of the party against whom the motion is granted and [consider] against him only those facts that he specifically admits. *Bata v. Central-Penn National Bank,* 423 Pa. 373, 224 A.2d 174 (1966), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 ... (1967)." *Beckman v. Dunn,* 276 Pa.Super.

527, 531, 419 A.2d 583, 585 (1980). The parties cannot be deemed to admit either conclusions of law or unjustified inferences. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *Higbee Corporation v. Kennedy,* 286 Pa.Super. 101, 428 A.2d 592 (1981). We will affirm the grant of such a motion only when the moving party's right to succeed is certain. *Leidy v. Deseret Enterprises, Inc.,* 252 Pa.Super. 162, 381 A.2d 164 (1977).

West Penn admits that it is bound by our earlier holding that PNB is the real party in interest.[8] West Penn argues, however, that it has acquired standing to proceed against PNB through the following assignment.

> Know all men by these presents, that Pittsburgh National Bank (PNB), a national banking association organized and existing under the laws of the United States and having its principal office at One Oliver Plaza, Pittsburgh, Pennsylvania, in consideration of the sum of One ($1.00) Dollar to it in hand paid, the receipt whereof is hereby acknowledged and other good and valuable consideration, intending to be legally bound hereby, has sold, assigned, transferred, and set over unto West Penn Administration Inc. (West Penn), a non-profit corporation, its successors and assigns, to their own proper use and benefit, any and all sums of money due or owing PNB and any and all claims, demands, and causes of action whatsoever in law or in equity which it has or may have against The Union National Bank of Pittsburgh (Union National) arising out of those certain series of transactions or occurrences involving the negotiation by Union National of certain checks payable to PNB, said transactions or occurrences being more fully set forth in the Amended Complaint filed of record in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division, at No. 723 October Term, 1970, in a certain legal action entitled "West Penn Administration, Inc. et al., plaintiffs, versus The Union National Bank of Pittsburgh, defendant," said checks being more fully identified in Exhibit "A" attached to said Amended Complaint.

8. *See* notes 5 and 6 and accompanying text, *supra.*

(Record at 32a). In support of this contention, West Penn claims that PNB as payee had rights against PNB as drawee. West Penn argues that only PNB's rights as payee were transferred by this assignment, and as recipient thereof, West Penn can proceed against PNB acting in the capacity of drawee. We disagree.

■ It is axiomatic that a party may not sue himself. Such an action would perforce have an absurd result. Moreover, it would deny the court the benefit of truly adverse parties. *See Moore v. Jamieson*, 451 Pa. 299, 306 A.2d 283 (1973). PNB as payee could not, therefore, bring an action against itself as drawee. Since "[a]n assignment does not confer upon the assignee any greater right, power, or interest than that possessed by the assignor," West Penn is precluded from bringing a conversion action against PNB.[9] *Pa. Higher Education Assistance Agency v. DeVore*, 267 Pa.Super. 74, 76, 406 A.2d 343, 344 (1979).

West Penn next claims that it has common law standing to bring an action against PNB to recover losses allegedly incurred because of PNB's negligence.[10] Again, we disagree.

■ In *West Penn I* we affirmed the trial court's finding that West Penn and PNB were grossly negligent in their management of the contribution checks. 233 Pa.Super. at 329, 335 A.2d at 735.[11] West Penn correctly states that

**9.** The determination we have reached requires us to affirm the trial court's order denying West Penn's motion for summary judgment on count I of its complaint. In count I West Penn sought to recover from PNB the face amount of the twenty-one checks for which PNB was both payee and drawee. Since we find that West Penn lacked standing to bring this action, it is evident that the motion was properly denied.

**10.** The only basis upon which West Penn claims standing in its pleadings is through the assignment. Record at 44a and 56a. The trial court, however, did not deem West Penn's claim of common law standing to be waived. We, therefore, address this claim despite West Penn's failure to raise it in its pleadings.

**11.** *West Penn Admin., Inc. v. The Union Nat'l Bank*, 233 Pa.Super. 311, 335 A.2d 725 (1975), is incorporated by reference in the parties' pleadings and is a matter of public record. Record at 44a and 56a. *See also* note 7 *supra*.

negligence is not a bar to recovery against a party who is guilty of wanton, reckless or grossly negligent conduct.[12] West Penn's *gross* negligence, however, is a bar to its recovery.[13] *Hogg v. Bessemer and Lake Erie Railroad Company*, 373 Pa. 632, 96 A.2d 879 (1953). "Plaintiff's reckless conduct bars recovery for the result of defendant's wanton misconduct for the same reason that contributory negligence constitutes a defense to an action based on mere negligence." *Elliott v. Philadelphia Transportation Co.*, 356 Pa. 643, 53 A.2d 81 (1947). Thus, as with contributory negligence, plaintiff's gross negligence is a bar because it presents a new cause that replaces defendant's gross negligence as the legal cause of plaintiff's injury.[14] West Penn thus cannot bring a negligence claim against PNB.

**12.** This action arose prior to the adoption of the comparative negligence act and is thus governed by the doctrine of contributory negligence. *Cf.* Act of July 9, 1976, P.L. 855, Act No. 152, eff. Sept. 7, 1976 (17 P.S. §§ 2201 and 2102) (reenacted April 28, 1978, P.L. 202, Act. No. 53, § 10(89), eff. June 27, 1978 (42 Pa.C.S.A. § 7102)) (a plaintiff's contributory negligence is not a bar to recovery so long as his negligence is not greater than the defendant's negligence, although his negligence is set off in determining the proportion of damages to which he is entitled). *See Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313 (1976).

**13.** West Penn also argues that negligence is not a factor in determining its right to recover in a conversion action against a drawee bank. *See* 13 Pa.C.S.A. § 3419(b). This argument is irrelevant, since we have determined that West Penn lacks standing to bring a conversion action. *See* note 9 and accompanying text, *supra*.

**14.** West Penn contends that the trial court erred in ruling that Count II of the complaint was barred by contributory negligence because PNB's motion for judgment on the pleadings failed to raise this claim. PNB's motion claimed that West Penn lacked standing to bring either count of its complaint. PNB specifically contested West Penn's claim of standing based upon the assignment, which is the only grounds upon which West Penn had asserted standing. *See* note 10 *supra*. PNB's motion properly addressed the pleadings and, accordingly, PNB should not be prejudiced for failing to respond to claims not yet raised.

We next address the trial judge's grant of Union National's motion for summary judgment.[15] We affirm the order granting the motion for two reasons. First, PNB had joined Union National as an additional defendant in order to seek indemnification. Record at 10a–17a. In light of our affirmance of the order granting PNB's motion for judgment on the pleadings PNB logically has no claim against Union National. Second, as the real party in interest, PNB[16] has assigned to West Penn all of its claims against Union National arising out of this dispute.[17] "When the parties to an agreement reduce their understanding to a writing which uses clear and unambiguous terms, a court need look no further than [the] writing itself when asked to give effect to that understanding. *Robert F. Felte v. White*, 451 Pa. 137, 144, 302 A.2d 347, 351 (1973)." *In Re Estate of Breyer*, 475 Pa. 108, 115, 379 A.2d 1305, 1309 (1977). The effect of the assignment then becomes a question of law to be decided by the court. *Katz v. Pittsburgh Mercantile Co.*, 414 Pa. 638, 202 A.2d 25 (1964). PNB's assignment to West Penn unequivocally conveyed to West Penn any and all of PNB's claims arising out of the diversion of the contribution checks.[18] PNB, therefore, cannot bring an action against Union National for claims arising out of these transactions.

**15.** We do not consider the trial court's finding that the action was barred by collateral estoppel because of our holding that PNB lacked standing to bring this action.

**16.** *See* notes 5 and 6 and accompanying text, *supra.*

**17.** The assignment states in relevant part that PNB has:
sold, assigned, transferred, and set over unto . . . (West Penn), a non-profit corporation, its successors and assigns, to their own proper use and benefit, *any and all sums of money due or owing PNB and any and all claims, demands, and causes of action whatsoever in law or in equity* which it has or may have against . . . (Union National) arising out of those certain series of transactions or occurrences involving the negotiation by Union National of certain checks payable to PNB, said transactions or occurrences being more fully set forth in the Amended Complaint. . . .
Record at 32a. (emphasis added).

**18.** PNB's reliance upon *Restifo v. McDonald*, 426 Pa. 5, 230 A.2d 199 (1967), is unfounded. In *Restifo* our supreme court considered the effect of a *release* in a third party situation. The court recognized

Accordingly, we affirm the orders of the court of common pleas.

that "the releasing party is most apt to regard the release as a contract which constitutes the successful settlement of his claim against the release." *Id.*, 426 Pa. at 10, 230 A.2d at 201. Releases, therefore, must be strictly construed in order to avoid their being used to fraudulently procure the releasors right to contribution in a third party action. Thus, we deem a release as covering only those matters unequivocally contemplated by the parties at the time of the release. In the instant case, we are confronted not with a release, but by an assignment. Unlike a release, an assignment does not represent a settlement of claims, but rather a transfer thereof. The parties to an assignment, therefore, are not deluded by the assumption that the assignment terminates all claims. Accordingly, an assignment purporting to convey all present and future claims arising out of a given occurrence clearly contemplates an action in indemnity.