Patti M. ROTTMUND, Executrix of the Estate of David R. Artz, Deceased,

v.

CONTINENTAL ASSURANCE COMPANY, and Constitution Life Insurance Company.

Civ. A. No. 89–5970.

United States District Court, E.D. Pennsylvania.

Dec. 27, 1990.

James F. Mundy, Philadelphia, Pa., for plaintiff.

Stephen C. Baker, Philadelphia, Pa., for defendant Continental Assur. Co.

Michael Saltzburg, Philadelphia, Pa., for defendant Constitution Life Ins. Co.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This is an action brought by the Estate of David R. Artz pursuant to the Pennsylvania Slayers Act, 20 Pa. Cons. Stat.Ann. §§ 8801–8815 (Purdon 1975 & Supp.1989), for the proceeds of two life insurance policies. Plaintiff Patti M. Rottmund, formerly Patti M. Artz, is suing in her capacity as the Executrix of the Estate of her former husband, David R. Artz. The life insurance policies in question insured the life of the decedent David Artz and were issued by defendants Continental Assurance Company ("Continental") and Constitution Life Insurance Company ("Constitution").

Plaintiff has filed a motion for summary judgment, defendant Continental has filed a motion for summary judgment, and defendant Constitution has filed a motion for summary judgment. For the reasons set forth below, I shall deny all three motions for summary judgment.

## I.

Summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). The court does not resolve questions of disputed fact, but simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson*, 556 F.2d 692 (3d Cir.1977). The facts must be viewed in the light most favorable to the opposing party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 252, 106 S.Ct. at 2512.

## II.

On April 25, 1984, the decedent David Artz, as owner and Chief Executive Officer of Conestoga Fuels, Inc. ("CFI"), entered into an agreement [hereinafter the "Stock Purchase Agreement"] with Samuel Lombardo. Under the terms of the Stock Purchase Agreement, Lombardo agreed to purchase all of the outstanding shares of stock in CFI for a total purchase price of $1,500,-000.00. After executing the Stock Purchase Agreement, Artz purchased the two insurance policies which are the subject of the present action, designating CFI as the beneficiary of both policies. Subsequently, Artz changed the beneficiary of both policies to Conestoga Holding, Inc., an erroneous designation for Conestoga Holding Company ("CHC"). CHC was jointly owned by Samuel Lombardo and John Kramer.

David Artz was murdered on February 19, 1985. As of the date of Artz's death, the Stock Purchase Agreement had not been fully executed, but service contracts had been undertaken in reliance upon it. On July 25, 1985, plaintiff, Artz's wife, entered into an agreement [hereinafter the "Agreement"] with Lombardo, Kramer, and others who were parties to the service contracts to terminate the Stock Purchase Agreement as well as the service contracts. Plaintiff made this Agreement in both her

individual capacity and in her capacity as Executrix of the Estate of David R. Artz.

The Agreement refers to three life insurance policies, all of which insured the life of David Artz. Lombardo, Kramer and the others agreed to make no claim of ownership to, or claim the proceeds payable from, a life insurance policy with Continental, Policy No. 03229330. In exchange, plaintiff, referred to in the Agreement as Patti Artz, and CFI agreed to make no claim of ownership to, or claim the proceeds payable from, a life insurance policy with Constitution, Policy No. 8087059, and a life insurance policy with Continental, Policy No. 3264721. Neither of the defendant insurance companies was a party to the Agreement, nor part of the negotiations leading up to the Agreement.

Pursuant to their rights under the Agreement and as the owners of the CHC, the designated beneficiary, Lombardo and Kramer commenced an action against Continental and Constitution for the proceeds of the two insurance policies at issue in the present case. Continental and Constitution filed a separate action alleging, among other things, that Lombardo and Kramer had no legal rights to the insurance proceeds because they had organized and implemented the murder of the insured, David Artz. The two actions were consolidated and later withdrawn when Lombardo and Kramer voluntarily relinquished any and all claims to the proceeds under the two life insurance policies.

After Lombardo and Kramer abandoned their claims, plaintiff, on behalf of the Estate of David R. Artz, made a demand upon Continental and Constitution for payment of the proceeds under the policies. Both Continental and Constitution rejected plaintiff's demand. Thereafter, plaintiff filed the present action based on the premises that, under the Pennsylvania Slayer's Act, 20 Pa. Cons. Stat. Ann. §§ 8801–8815 [1], the proceeds of the two life insurance policies, Continental Policy No. 3264721 and Constitution Policy No. 8087059, should be paid to the decedent's estate.

### III.

In her motion for summary judgment, plaintiff makes two arguments: (1) that this court should construe the allegations made by Continental and Constitution in the previous lawsuit as binding admissions in this lawsuit and, thus, conclusive of certain facts; and (2) that there is no evidence to support the defendants' defenses. Plaintiff contends that she is entitled to summary judgment because she satisfies her burden of proving that Lombardo and Kramer are responsible for the death of David Artz merely by introducing evidence that defendants made the same allegation with respect to Lombardo and Kramer in the earlier lawsuit. Plaintiff's contention is totally without merit.

The averments of plaintiff's Complaint are based upon, and in some cases verbatim reiterations of the averments made by the defendants in their Amended Complaint in the prior lawsuit (United States District Court, Eastern District of Pennsylvania, Civil Action No. 85–48675). In the earlier lawsuit, defendants sought to preclude Lombardo and Kramer from recovering any of the proceeds of the very insurance policies which are the subject of this litigation. Some of those averments describe the business dealings among Artz, Lombardo, and Kramer, and the history of the application for and issuance of the life insurance policies on Artz. The allegation critical to plaintiff's motion for summary judgment, which she borrowed from defendants' Amended Complaint in the earlier action, states:

> On February 19, 1985 ..., David Artz was found murdered in Coral Springs, Florida by multiple gunshot wounds as a result of a conspiracy organized and implemented by Defendants Kramer and Lombardo.

1. The Pennsylvania Slayer's Act provides in pertinent part:
   Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy ... of insurance on the life of the decedent ... shall be paid to the estate of the decedent, unless the policy ... designates some person not claiming through the slayer as alternative beneficiary to him.
   20 Pa. Cons. Stat.Ann. § 8811(a).

In responding to plaintiff's Complaint, however, defendants state that, despite reasonable investigation, they are incapable of formulating a belief as to the truth of the very allegations they themselves alleged in their Amended Complaint in 1985.

■ The cases cited by plaintiff do not support her contention that defendants' allegation in the prior action is a binding admission in this proceeding and, therefore, conclusive proof of certain facts—i.e. that Lombardo and Kramer murdered, or conspired to murder, David Artz.

In *Airco Industrial Gases Inc. v. Teamster Health and Welfare Pension Fund,* 850 F.2d 1028 (3d Cir.1988), a defendant admitted certain facts prior to trial in response to requests for admissions pursuant to Rule 36 of the Federal Rules of Civil Procedure. After a bench trial, the District Court made factual findings favorable to defendant which were inconsistent with the admissions made by defendant in response to the request for admissions. On appeal, the Court of Appeals reversed on the basis that the Rule 36(b) provides that "any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." *Id.* at 1035.

The decision in *Airco* is inapposite to the present case. The allegation that plaintiff claims is a binding admission was made in a pleading in another case, *not* in response to requests for admissions in the same case. Accordingly the provisions and effect of Rule 36 are *not* relevant to whether the insurance companies are bound by an allegation made in their Amended Complaint in the prior action.

In *Glick v. White Motor Co.,* 458 F.2d 1287 (3d Cir.1972), one of the defendants during the course of trial admitted that certain exhibits offered by plaintiff were authentic and then, on appeal and after changing attorneys, attempted to dispute the authenticity of those exhibits. In holding that the defendant was precluded from disputing the authenticity of the exhibits on appeal, the court relied upon the following language from the opinion in *Scarano v. Central R. Co. of New Jersey,* 203 F.2d 510 (3d Cir.1953):

> The rule we apply here need be and is no broader than this. A plaintiff who has obtained relief from an adversary by asserting and *offering proof to support one position* may not be heard later *in the same court* to contradict himself in an effort to establish *against the same adversary* a second claim inconsistent with his earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing "fast and loose with the courts" which has been emphasized as an evil the court should not tolerate.

*Id.* at 1291 (emphasis added). The decision in *Glick* does not even address the question of the effect of "admissions" made by a party in a prior proceeding against a different opponent.

Plaintiff also places reliance on two cases from other circuits: *Williams v. Union Carbide Corp.,* 790 F.2d 552 (6th Cir.), *cert. denied,* 479 U.S. 992, 107 S.Ct. 591, 93 L.Ed.2d 592 (1986); *Enquip, Inc. v. Smith-McDonald Corp.,* 655 F.2d 115 (7th Cir. 1981).

In *Williams,* the plaintiff asserted a claim against Union Carbide, alleging that he sustained injuries as a result of exposure to toxic chemicals while working at Union Carbide's plant. However, in an earlier suit against a different defendant, plaintiff had alleged that his injuries were sustained as a result of an acetylene explosion. At trial, Union Carbide sought to impeach the plaintiff by introducing the complaint filed by plaintiff in the prior action but was not permitted to do so by the trial judge. On appeal, the Court of Appeals reversed, holding that Union Carbide should have been permitted to introduce into evidence the complaint filed in the prior action. In so holding, the Court did *not* find that the prior pleading constituted a binding admission on the part of plaintiff that his injuries were caused by the explosion. Instead, the court merely held that the pleading should have been admitted into evidence to be considered by the fact

finder with all of the other evidence in the case.[2]

The case most analogous to the present action is *Enquip, Inc. v. Smith–McDonald Corp.*, 655 F.2d 115 (7th Cir.1981). The lawsuit in *Enquip* was brought to recover the contract price for oil-water separator tanks manufactured by plaintiff. Defendant filed a motion for partial summary judgment against the third-party defendant. The court granted the motion for summary judgment on the basis of the pleading of the third-party defendant in a related state court case.

On appeal, the Court of Appeals held that it was error to grant summary judgment against the third-party defendant solely on the basis on his pleading in the state court action, alleging that the tanks met specifications. The Court of Appeals stated:

> When a statement or plea from another case is sought to be used as an admission in a second suit, courts are therefore careful to allow the opposing party a full opportunity to explain the purported admission to demonstrate that there is an issue of material fact.

*Id.* at 118. Hence, the Court of Appeals concluded that the trial court should have considered the entire record before it, including the third-party defendant's memoranda and exhibits which made it clear that the third-party defendant had pleaded conformity with specifications only in the alternative and that the assertion of conformity was a highly contested issue. Of particular note with respect to the issue before this court is that the Court of Appeals held that "the while such evidence [i.e., pleadings from another case] was admissible it was *not* binding or conclusive." *Id.* (emphasis added).

■ In the present case, upon consideration of the entire record before me, it is clear that the issue of whether Lombardo and Kramer killed, or conspired to kill, David Artz remains a genuine issue of material fact. Although defendants alleged in the prior action that Lombardo and Kramer conspired to kill David Artz, that case settled and, thus, the issue remains unresolved.

The allegation in that prior action concerning the murder of David Artz was an allegation by the insurance companies concerning the actions of third-parties—Lombardo and Kramer. The making of an allegation concerning the actions of third-parties does *not* prove that allegation true. By definition, an allegation is an assertion without proof. Plaintiff should heed the legal maxim—innocence until proven guilty. Quite simply, plaintiff cannot satisfy her burden of proving her allegation that Lombardo and Kramer killed, or conspired to kill, David Artz merely by introducing evidence that the insurance companies alleged the same thing in the previous case. In other words, with respect to proving the actions of third-parties, two allegations are *not* better than one.

Because the allegation made by the insurance companies in the Amended Complaint in the prior action does *not* constitute a binding admission and, therefore, is *not* conclusive of any of the facts in this case, plaintiff is clearly *not* entitled to summary judgment. Because plaintiff has failed to satisfy her burden of proving that Lombardo and Kramer were responsible for the death of David Artz, I need *not* consider plaintiff's second contention that defendants do not have sufficient evidence to support their defenses. To consider plaintiff's second contention would be putting the cart before the horse.

## IV.

In its motion for summary judgment, Continental contends that the July 25, 1985 Agreement constitutes an effective assignment by plaintiff to Lombardo, Kramer, and CHC of any claim of ownership or claim to the proceeds payable under the insurance policies at issue. Therefore,

---

**2.** Similarly, in *Walaschek & Associates v. Crow*, 733 F.2d 51 (7th Cir.1984), which is also cited by plaintiff in her memorandum of law submitted in support of her motion for summary judgment, the court held that a pleading of a party in one proceeding is admissible into evidence in another proceeding involving that same party.

Continental argues that, pursuant to the law of assignments, plaintiff's right to performance by the obligors (the two defendants) has been extinguished. In response, plaintiff maintains that Continental has no standing to enforce the terms of the Agreement.

On July 25, 1985, Rottmund (a.k.a. Artz), in her capacity as Executrix of the Estate of David Artz, executed an Agreement with Lombardo, Kramer, and CHC. The part of that Agreement which Continental contends is an assignment is as follows:

> Artz and CFI agree that they will make no claim of ownership to a life insurance policy with Constitution Life Insurance Company ... or to the life insurance policy with Continental Assurance Company ..., nor shall they make claim to the proceeds payable from said policy as a result of the death of David R. Artz.

An assignment is a present transfer of one's rights *under a contract*. The language quoted above, although clearly a promise *not* to do something, is far from an affirmative transfer of a present right. Moreover, it is not even clear, nor did Continental attempt to establish, whether the Estate of David Artz has, or had, any contract rights under the two life insurance policies at issue. An entity cannot assign a contract right if it does not have one. However, none of that matters in this case because the Estate of David Artz is *not* bringing this action pursuant to any contract right allegedly assigned to Lombardo, Kramer, and CHC. Rather, the Estate of David Artz is bringing this action pursuant to a statutory right created by the Pennsylvania Slayer's Act.

The validity of the Agreement and the effectiveness of any purported assignment are matters which are open to challenge or enforcement only by those in privity of contract or those with some legal right existing at common law or created by statute. All others must be deemed strangers to the Agreement with no standing to assert any rights thereunder. In a motion to dismiss, the defendants attempted to acquire the status of third-party beneficiaries to the Agreement. However, in a Memorandum and Order dated March 26, 1990, I denied defendants' motion to dismiss, concluding that the defendants had failed to prove that they were intended third-party beneficiaries under the Agreement.

Now in another attempt to enforce the Agreement, defendants contend that they are the obligors of an effective assignment. Continental points to no legal theory which would confer standing upon it as a non-party to enforce the terms of the Agreement. Continental is merely asking this court to declare that the Agreement resulted in a valid assignment and, thus, to dismiss plaintiff's cause of action.

In the absence of some statutory, common law, or equitable duty, the parties to an agreement have no obligation to a nonparty, regardless of the extent to which that nonparty is interested in enforcement or abrogation of the contract. *See Township of Aston v. Southwest Delaware County Municipal Authority*, 112 Pa. Commw. 434, 535 A.2d 725 (1988) (stranger to a contract may not seek to have the contract voided). Further, the burden is on one who claims under a contract to show that he has a cognizable interest therein. *Fourtees Co. v. Sterling Equipment Corp.*, 242 Pa.Super. 199, 363 A.2d 1229, 1232 (1976). Continental has not only failed to demonstrate a cognizable interest in the purported assignment, but has not even claimed any right thereunder in the first instance. Defendant has merely identified itself as an "obligor," asserted the validity of the Agreement, and demanded that this court enforce that Agreement. In other words, Continental has failed to allege any obligation or duty owed to it by plaintiff, and has therefore established no right of enforcement.

Defendant Continental relies exclusively upon the case of *West Penn Administration, Inc. v. Pittsburgh National Bank*, 289 Pa.Super. 460, 433 A.2d 896 (1981), in support of its proposition that, as an obligor, it may properly obtain summary judgment on an assigned claim when plaintiff is the assignor. In that case, plaintiff West Penn Administration, Inc. ("West Penn")

brought suit against Pittsburgh National Bank ("PNB"). West Penn was the administrator of several employee pension and welfare trusts. *Id.* at 463, 433 A.2d at 893. Normally, the checks would be deposited in a special account at PNB. However, an employee at West Penn managed to divert some of the checks and deposit them in a bank account at Union National Bank ("Union"), to which he had access. West Penn sued PNB, alleging that PNB negligently paid the checks bearing PNB's false endorsement. PNB joined Union as a third-party defendant, alleging, among other things, that Union was liable to PNB for any loss that it sustained on the basis of Union's negligent acceptance of the deposits.

PNB moved for summary judgment, asserting that West Penn lacked standing to bring suit. West Penn countered that as the assignee of PNB's title and interest in the forged checks, it acquired standing to bring a negligence action against the assignor PNB. In turn, Union moved for summary judgment on the grounds that the action was barred by res judicata and collateral estoppel.

The court granted both PNB's and Union's motions for summary judgment. West Penn and PNB filed appeals, and the Superior Court affirmed the trial court as to both motions.

With respect to PNB's motion for summary judgment, the Superior Court noted that in taking an assignment of PNB's claims and causes of action against Union, West Penn as assignee obtained no rights or powers greater than those possessed by the assignor PNB. The court recognized the absurd result of plaintiff's argument that it had been assigned a right to sue PNB since that would suggest that in some manner PNB had the legal capacity to sue itself.

With respect to Union's motion for summary judgment, the Superior Court affirmed the lower court's granting of the motion for two reasons. First, in light of the affirmance of the order granting PNB's motion, PNB logically had no claim against Union. Second, PNB had assigned to West Penn all of its claims against Union arising out of this dispute. The Superior Court went on to say:

> The effect of the assignment ... becomes a question of law to be decided by the court. PNB's assignment to West Penn unequivocally conveyed to West Penn any and all of PNB's claims arising out of the diversion of the contribution checks. PNB, therefore, cannot bring an action against Union National for claims arising out of these transactions.

*Id.* at 471, 433 A.2d at 902.

The decision in *West Penn* simply does *not* stand for the proposition alleged by defendant. Nowhere in the West Penn decision does the court discuss the issue of an obligor's standing to enforce an assignment. Furthermore, *West Penn* can easily be distinguished from the present case. In *West Penn* all three parties—the assignor, the assignee, and the obligor—were involved in the lawsuit, whereas in the present case, only the alleged assignor and obligors are involved. In addition, in *West Penn,* the assignor brought its action pursuant to contract rights that it had previously assigned. In the present case, however, plaintiff's action for the proceeds of the insurance policies is *not* grounded on a contract right that she assigned. Rather, plaintiff's action stems from a statutory right created by the Pennsylvania Slayer's Act, which disentitles a murderer of an insured to the benefit of his criminal act.

This court finds it amazing that neither defendant nor plaintiff discussed the assignment issue in relationship to the Pennsylvania Slayer's Act and the public policy behind that Act. Clearly, an assignment of a right to the insurance proceeds created by the Act to the very murderers of the insured would be contrary to the public policy established by the Act "that no person shall be allowed to profit by his own wrong." 20 Pa. Cons. Stat. Ann § 8815. Therefore, even if there were a valid assignment, it would be void as against public policy. *See Federal Deposit Ins. Corp. v. Barness,* 484 F.Supp. 1134, 1150–51 (E.D.Pa.1980); Restatement (Second) of Contracts § 317 ("A contractual

right can be assigned unless ... the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy.").

Accordingly, because I conclude that (1) the Estate of David Artz is bringing this action pursuant to a statutory right and *not* pursuant to any allegedly assigned contract right; (2) that, even if it were, Continental lacks standing to enforce the assignment; and (3) that such as assignment would be void in light of the public policy behind the Pennsylvania Slayer's Act, I shall deny Continental's motion for summary judgment.

## V.

In its motion for summary judgment, defendant Constitution contends that plaintiff is estopped to claim policy proceeds because she intentionally or negligently induced the defendants to believe that no such claims would be forthcoming from the Estate of David R. Artz. Constitution contends that plaintiff's present claims must be dismissed because it detrimentally relied upon its induced belief that plaintiff had permanently relinquished all rights to the subject policies. Constitution describes the detriment suffered as the waiver by Constitution, through the Mutual General Release signed in the prior action, of its right to exact treble damages from the "killers" of David Artz.

Under the guise of a claim of intentional or negligent inducement, Constitution does no more than revisit issues which this court resolved in its Memorandum and Order dated March 26, 1990 denying defendants' motion to dismiss. In their motion to dismiss, defendants claimed that they were third-party beneficiaries to the Agreement between the plaintiff and Lombardo and Kramer, allocating among them claims for the proceeds of the three policies on David Artz' life.

In denying the motion to dismiss, this court made several determinations which are equally dispositive of Constitution's motion for summary judgment. This court determined that

1. In light of the circumstances under which the parties entered into the Agreement, it is clear that their intention ... was to eliminate the possibility of multiple claimants competing for the proceeds of the same insurance policy.

2. It is reasonable to infer from the Agreement that the parties did not foresee or expect that there would be problems associated with recovering the proceeds under their respective policies. At least from plaintiff's standpoint, it is obvious that, when she signed the Agreement, she had no idea that Lombardo and Kramer would not be successful in collecting the proceeds under the life insurance policies at issue because they may have been responsible for murdering her husband.

3. The plaintiff kept her promise to Lombardo and Kramer in that she did not claim the proceeds under the life insurance policies at issue until after Lombardo and Kramer relinquished any and all claims to those policies.

4. At most, all that Continental and Constitution should have expected as a result of the Agreement was that plaintiff would not make any claim to the proceeds under the insurance policies at issue if those proceeds were paid to Lombardo, Kramer, and CHC as contemplated by the parties.

5. Continental and Constitution should not have expected that plaintiff, on behalf of the Estate of David R. Artz, would not claim ownership to the proceeds pursuant to the Pennsylvania Slayer's Act.

*See* Memorandum and Order dated March 26, 1990.

Those findings and conclusions are a complete and definitive response to Constitution's claim that plaintiff represented that she would under no circumstances make a claim for proceeds of the policies at issue. Those findings and conclusions also specifically reject Constitution's contention that it was justified in believing that plaintiff would not seek to recover the insurance proceeds pursuant to the Pennsylvania Slayer's Act. Nothing in Constitution's

motion for summary judgment constitutes a basis for this court to reconsider its previous determinations. Accordingly, I shall deny Constitution's motion on the basis of the determinations that I made in my Memorandum and Order dated March 26, 1990.