585 A.2d 511

**John C. YOUNGMAN, Jr., Appellant,**

**v.**

**CNA INSURANCE COMPANY, American Casualty Company of Reading, Pennsylvania.**

Superior Court of Pennsylvania.

Argued Dec. 12, 1990.

Filed Jan. 22, 1991.

Petition for Allowance of Appeal Denied June 24, 1991.

382

John C. Youngman, Jr., Williamsport, pro se.

Walter A. Tilley, III, York, for appellees.

Before CIRILLO, President Judge, and JOHNSON and BROSKY, JJ.

JOHNSON, Judge.

John C. Youngman appeals from an Order of the Court of Common Pleas which denies his Motion for Partial Summary Judgment and grants CNA Insurance Company's and American Casualty Company of Reading, Pennsylvania's (collectively hereinafter referred to as "Insurers") Motion for Judgment on the Pleadings. We are asked to examine the duty of an insurer to defend an appeal brought by a member of a school board, insured in his official capacity, from a judgment rendered against the school board collectively. As we determine that no judgment had been rendered against the school board member individually, either in a personal or in an official capacity, that, where the board voted eight to one not to appeal, the subsequent appeal by an individual member was outside the scope of that member's duties, and that the policy involved covered only acts done within the scope of the members' duties as school board members, we affirm the Order of the trial court granting judgment on the pleadings in favor of the insurers.

In 1982, during Youngman's tenure as a member of the Williamsport Area School District Board of Education, the Board voted to deny the use of school facilities during the school day to a group of students ("Petros") because of the religious nature of their organization. The students filed

suit in the United States District Court for the Middle District of Pennsylvania against the school district, the nine members of the Board, the superintendent of the District, and the principal of the high school.

The students' claim was grounded in the First Amendment of the United States Constitution, specifically, the Free Exercise Clause, and the Freedom of Speech Clause. The district court granted summary judgment against the students on the free exercise claim, but in their favor on the freedom of speech claim. *Bender v. Williamsport Area School District*, 563 F.Supp. 697 (1983).

On May 31, 1983, the Board voted eight to one against appealing the district court ruling, Youngman casting the lone dissenting vote. In doing so, the Board elected to comply with the district court order and allow the Petros to meet on the same basis as other student clubs.

Despite the Board's vote not to appeal, in June of 1983, Youngman filed an appeal to the Third Circuit Court of Appeals, which reversed the district court and held that to allow the students to meet in the manner proposed violated the First Amendment establishment clause. 741 F.2d 538 (3rd Cir.1984).

After Youngman had petitioned for appeal, but before the Third Circuit rendered its opinion, the *Bender* plaintiffs filed a Bill of Costs with the district court for counsel fees and costs incurred in litigation at the district court level. The petition was premised on the theory that the students were the prevailing parties under 42 U.S.C. § 1988; and thus they were entitled to costs and attorneys' fees. The district court deferred ruling on the students' petition pending disposition of Youngman's appeal. *Bender v. Williamsport Area School District*, No. 82–0692 (M.D.Pa. Dec. 14, 1983).

After Youngman's successful appeal, the students petitioned for a Writ of Certiorari from the United States Supreme Court, which was granted. Declining to address the merits of the case, the Court held instead that Young-

man had lacked standing to prosecute the appeal and that the Third Circuit, therefore, lacked jurisdiction. The judgment of the Court of Appeals was vacated, and the case was remanded with instructions to dismiss for want of jurisdiction.

Youngman thereafter brought suit in the Pennsylvania Court of Common Pleas of Lycoming County against Insurers for recovery of the legal expenses incurred in appealing to the Third Circuit Court. After pleadings were filed, Insurers filed a Motion for Judgment on the Pleadings. In response, Youngman filed a Motion for Partial Summary Judgment, asking the trial court to enter an order finding the following:

    (a) [The Board of Education Liability policy in issue was] in effect at the time of the filing of the *Bender* action and at all times thereafter for the purposes of this suit;

    (b) [Youngman] was an assured under this policy;

    (c) [Youngman] suffered a loss during the litigation of the *Bender* action as a result of incurring legal fees, expenses, and costs and such loss was a covered loss under the policy; [and]

    (d) the Defendant CNA and/or American Casualty breached their contractual agreement with the [school district] and [Youngman] ... by not paying legal fees, expenses and costs for ... Youngman during and after the underlying litigation and that [Insurers] are thereby responsible for all reasonable legal fees, expenses and costs incurred by Youngman in his defense and appeal of the *Bender* action.

Motion for Partial Summary Judgment, December 8, 1989, at 8–9. The trial court issued an order which denied Youngman's Motion for Partial Summary Judgment and granted Insurers' Motion for Judgment on the Pleadings. It is from this Order that Youngman appeals.

Initially, Youngman appeals the denial of his Motion for Partial Summary Judgment. While "an appeal may

be taken as of right from any final order of a[ ] . . . lower court," Pa.R.A.P. 341(a), an order denying summary judgment is not a final order, but, rather, interlocutory in nature and unappealable. *Carraghan v. Obrecht,* 122 Pa.Cmwlth. 562, 552 A.2d 359 (1989). Therefore, except to the extent that the arguments raised on this issue are argued as to other issues, we will not review them here.

■ Next, Youngman contends that the trial court erred by ruling in favor of Insurers' Motion for Judgment on the Pleadings. In reviewing an Order of the Trial Court awarding judgment on the pleadings, our standard of review is as follows:

> [W]e must accept as true all well-pleaded statements of fact of the party against whom the motion is granted and and consider against him only those facts that he specifically admits. *West Penn Administration Inc. v. Pittsburgh National Bank,* 289 Pa.Super. 460, 467, 433 A.2d 896, 900 (1981) (citations omitted); *Zelik v. Daily News Publishing Co.,* 288 Pa.Super. 277, 431 A.2d 1046 (1981); . . . The parties cannot be deemed to admit either conclusions of law or unjustified inferences. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *West Penn,* 289 Pa.Super. at 467, 433 A.2d at 900.

*Jones v. Travelers Insurance Co.,* 356 Pa.Super. 213, 217, 514 A.2d 576, 578 (1986).

■ We begin our analysis by examining an insurance company's duty to defend. The purchase of insurance includes, not just the insurer's duty to indemnify for successful claims within the policy's coverage, but also the defense of such claims. *Zeitz v. Zurich General Accident & Liability Insurance Co.,* 165 Pa.Super. 295, 67 A.2d 742 (1949); *D'Auria v. Zurich Insurance Co.,* 352 Pa.Super. 231, 507 A.2d 857 (1986). The duty to defend is separate and greater than the duty to indemnify. *Erie Insurance Exchange v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363 (1987). This duty exists even where the claims made against an assured are groundless, false, and fraudulent. *Zeitz,* 165 Pa.Super. at 301–02, 67 A.2d at 746, *D'Auria,* 352

Pa.Super. at 234, 507 A.2d at 859. In Pennsylvania, the duty to defend an action brought against the assured is generally determined by comparing the facts alleged in the complaint against the coverage provided by the policy; the duty to defend arises where, if the facts as alleged are proven, coverage would exist under the terms of the policy. *D'Auria*, 352 Pa.Super. 235, 507 A.2d at 859.

Youngman contends, and the insurers concede, that the *Bender* plaintiffs' complaint sought, in addition to an injunction allowing them to meet on the school premises, reimbursement of attorneys' fees in accordance with 42 U.S.C. § 1988. The parties also agree that these fees were sought against the Board and each of the defendants "officially and individually." The issue, then, is whether Insurers were liable for the legal expenses incurred in Youngman's appeal of the trial court decision.

Youngman argues initially that he might have been personally liable for the *Bender* plaintiffs' attorneys' fees since the *Bender* plaintiffs prevailed, and that, therefore, the expense of appealing this action is covered by the policy. We disagree.

Initially, we hold, as did the trial court, that where the insured appeals, the rendered judgment, and not the allegations of the complaint, govern the insurer's duty regarding the appeal regardless of the allegations in the complaint. No case cited by Youngman, nor any that we have found, can be relied upon for a contrary result. Indeed, it offends reason to suggest that an insurer could be liable for the expenses of an appeal where no loss covered by the policy was in issue on appeal. The issue becomes, then, whether Youngman's appeal concerned a loss covered by the policy.

We look first to the policy to determine the scope of coverage. The Board of Education Liability [BEL] policy issued by Insurers contained an insuring clause which stated, in pertinent part:

The Insurer ... agrees as follows:

(a) With the Assureds that if, during the policy period any claim or claims are made against them, *individually or collectively,* for a Wrongful Act occurring during the policy period, the Insurer will pay on behalf of, in accordance with the terms of this policy, the Assureds, or any of them, ... for all loss which the said Assureds or any of them shall become legally obligated to pay.

Policy of Insurance, Section I(a) (emphasis added). The term, "Wrongful Acts," for which the policy provides coverage, is defined in the policy as:

any actual or alleged errors or misstatement or misleading statement or act or omission or neglect or breach of duty by the Assureds *in the discharge of their duties, individually or collectively,* or any matter claimed against them solely by reason of their being or having been Assureds during this policy period.

Policy of Insurance, Section III(c) (emphasis added).

The trial court held that the language of this policy "was never intended to cover actions pursued outside the scope of a board member's official conduct." Opinion of March 22, 1990, at 21. In analyzing this point, we note that much of the difficulty in this case centers on the meaning of the term "individual" in the policy, the complaint, and the case law. Out of context, the term "individual" fails to discriminate between one's official and personal capacity.

A party to a suit may be held liable for their actions in various capacities: collectively, as was the Board in this case; individually/officially; or individually/personally. Addressing the distinction between the latter two, the United States Supreme Court has stated:

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See *e.g., Scheuer v. Rhodes,* 416 U.S. 232, 237–238, 40 L.Ed.2d 90, 94 S.Ct. 1683 [1686–1687], ... (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n.

55, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon* [*v. Holt*, 469 U.S. 464, 471–472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878, 885 (1985) ]. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985). Although Youngman goes to great lengths to establish that the underlying *Bender* suit potentially imposed personal liability on him, such was not the case. In analyzing whether Youngman had standing to appeal, the United States Supreme Court stated:

> The first paragraph of the complaint alleged that the action was brought against the defendants "in their individual and official capacities." ... There is, however, nothing else in the complaint, or in the record on which the District Court's judgment was based to support the suggestion that relief was sought against any School Board member in his or her *individual* capacity. Certainly the District Court's judgment granted no such relief.... [T]he course of proceedings ... make it abundantly clear that the action against [Mr. Youngman] was "in his official capacity and only in that capacity."

*Bender v. Williamsport Area School District*, 475 U.S. 534, 543, 106 S.Ct. 1326, 1332, 89 L.Ed.2d 501, 512 (1986) (emphasis added). "Individual" capacity, in that context, clearly meant "personal capacity." The Supreme Court held that, although Youngman was sued in his official capacity, he had no interest, and therefore, no standing, to appeal in his personal capacity. "Acts performed by the same person in two different capacities 'are generally treated as the transactions of two different legal personages.'

F. James & G. Hazard, Civil Procedures § 11.6, p. 594 (3d ed. 1985)." *Bender,* 475 U.S. at 543, n. 6, 106 S.Ct. at 1332, n. 6, 89 L.Ed.2d at 501 n. 6. We further note that the language in a complaint seeking relief against one in his "official and individual capacity" does not necessitate a conclusion that relief was sought against the defendant "individually and personally." We conclude, as did the Supreme Court, that, although the *Bender* plaintiffs sought to impose liability on the Board collectively and in the members' individual, official capacities, they had not brought an action against the members of the Board *personally.* Youngman, therefore, could not have been held liable in his personal capacity. Furthermore, even had he been personally liable, as "[t]he policy was never intended to cover actions pursued outside the scope of a board member's official conduct," our rationale would lead us to conclude that Mr. Youngman's expenses still would not be covered under this policy since they were personally incurred.

Even had Youngman been empowered to appeal in his individual, official capacity, the *Bender* plaintiffs did not "prevail" against any of the individual defendants, even officially; instead, they prevailed exclusively against the Board, thus relieving any of the individual defendants of liability, even in an official capacity.

The Supreme Court, in holding that Youngman had no standing to appeal, observed that no relief was granted against any defendant in his individual capacity. *Bender, supra.,* 475 U.S. at 543, 106 S.Ct. at 1332, 89 L.Ed.2d at 511. It therefore follows that no liability for attorneys' fees could have been found against Youngman, because "liability on the merits and responsibility for fees go hand in hand. Where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant." *Kentucky v. Graham,* 473 U.S. at 165, 105 S.Ct. at 3104, 87 L.Ed.2d at 121. Therefore, Youngman was not entitled to coverage for

his individual appeal, even had the appeal been in his official capacity.

Youngman next argues that the Bill of Costs submitted to the district court named him individually, among others, as liable for the *Bender* plaintiffs' attorneys' fees. This observation, however, does not strengthen his position. The Bill of Costs was not filed until after Youngman appealed; therefore, it cannot, after the fact, create a duty upon the insurer to defend where a duty did not otherwise exist. We do not address the duty of the insurer to defend Youngman in that action to collect attorneys' fees. It suffices to state that there was no duty on the part of the insurers to defend a claim that did not exist at the time it was appealed.

Youngman further contends that his belief in the insurers' duty to defend, even if erroneous, was reasonable. He points to the fact that much of the case law upon which the trial court relied, including the Supreme Court resolution of the *Bender* case, was unavailable to him at the time of his appeal. Youngman's appeal was filed on June 10, 1983, nineteen months before *Brandon v. Holt, supra.*, and two years before *Kentucky v. Graham, supra.* Youngman argues that whether he would be liable for the *Bender* plaintiffs' counsel fees was unclear, given the terms of the policy, the circumstances of this case and the state of the law at the time that he brought his appeal.

We are not persuaded that the novelty of a legal argument regarding coverage creates coverage or a duty to defend where they do not otherwise exist. Assuming that, at the time of Youngman's appeal, no cases existed which delineated the distinctions between official and personal capacity liability, and the obligations of insurers under circumstances such as are here involved, this alone would not create a duty on the part of an insurer to defend. That duty exists only where the circumstances are within the terms of the policy. Here, as stated, such coverage does not exist. In any event, we believe that sufficient case law did exist at the time of Youngman's appeal to make clear

that Youngman was not subject to personal liability in the district court case. See *Monell v. New York Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978) ("[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent....."); *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (Award of attorneys' fees against Board of Corrections is appropriate in action against its representatives in their official capacity.)

Youngman next argues that the trial court erred in granting judgment on the pleadings by considering matters outside the proper scope of consideration for such a motion. Youngman fails, however, to specify what matters he presumes the trial court improperly factored into its opinion. In any event, having carefully reviewed the pleadings and the well-considered opinion of the trial court, we conclude, as a matter of law, that Insurers were entitled to judgment on the pleadings.

Finally, Youngman asserts that the trial court erred in its findings of fact and conclusions of law. In this argument, Youngman restates the erroneous positions taken above; namely, that a claim continued to exist for which the Insurers were required to defend.

We are not presented with an issue of the Insurers' duty in an action for attorneys' fees brought against Youngman in his official or personal capacity, for this had not happened when Youngman brought his federal appeal. Nor are we asked to consider the Insurers' duties to defend at the district court. The issue here involves the obligation of an insurer to "defend" an appeal by an individual member of a board where judgment has been rendered against the board collectively and that board decides collectively not to appeal. In these circumstances, we hold that insurers are not obligated to provide for the individual's legal expenses incurred in an appeal.

For the foregoing reasons, we affirm the Order of the trial court granting Insurers' Motion for Judgment on the Pleadings.

Order Affirmed.