602 A.2d 893

Thomas W. MAGUIRE and Mark J. Maguire, Appellants,

v.

The OHIO CASUALTY INSURANCE COMPANY, Dessa M. Milkovich, Administratrix of the Estate of June Zart, Luigi's Pizza Pub, Inc., Wayne Smeal, t/d/b/a Sunburst Motel and Pennsylvania Restaurants, Inc., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 22, 1991.

Filed Feb. 12, 1992.

Jefferson J. Shipman, Harrisburg, for appellants.

Timothy I. Mark, Harrisburg, for appellee Ohio Cas.

Before WIEAND, MONTEMURO and KELLY, JJ.

WIEAND, Judge:

Where a policy of liability insurance clearly provides otherwise, does the carrier's duty to defend its insured nevertheless continue after the carrier, in good faith, has exhausted its coverage by settling a third party death claim against its insured for policy limits. The trial court held that the duty to provide a defense did not survive a good faith exhaustion of coverage and entered judgment for the carrier. After careful review, we affirm.

On January 20, 1989, June Zart was killed as a result of a collision with a vehicle owned by Thomas W. Maguire and operated by his son, Mark J. Maguire. The vehicle was insured under a policy which had been issued by Ohio Casualty Insurance Company (Ohio Casualty). The policy had a liability limit of one hundred thousand ($100,000.00) dollars for a single claim. Following the accident, Ohio Casualty paid its policy limit to the Estate of June Zart, deceased, and took in exchange releases running in favor of the owner, operator and insurer of the Maguire vehicle.

Subsequently, the Zart Estate filed actions against Luigi's Pizza Pub, Inc. and Sunburst Motel, both of whom had allegedly supplied alcohol to Maguire prior to the happening of the accident. Mark Maguire was joined as an additional defendant in these actions, and a demand was made upon Ohio Casualty to provide a defense. The insurance company denied this request. Thomas and Mark Maguire then

commenced an action to obtain a declaratory judgment that
Ohio Casualty had a duty to provide a defense in the
pending actions. After an answer had been filed, Ohio
Casualty moved for judgment on the pleadings, and the
Maguires filed cross-motions for summary judgment and
judgment on the pleadings.[1] The trial court granted judg-
ment on the pleadings in favor of Ohio Casualty, and the
Maguires appealed.

 In reviewing an order awarding judgment on the
pleadings, "we must accept as true all well-pleaded state-
ments of fact of the party against whom the motion is
granted and consider against him only those facts that he
specifically admits. The parties cannot be deemed to admit
either conclusions of law or unjustified inferences."
*Youngman v. CNA Ins. Co.*, 401 Pa.Super. 381, 386, 585
A.2d 511, 514 (1991) (citations omitted).

The insuring agreement in the policy issued by Ohio
Casualty provides as follows:

> We will pay damages for bodily injury or property dam-
> age for which any covered person becomes legally respon-
> sible because of an auto accident. We will settle or
> defend, as we consider appropriate, any claim or suit
> asking for these damages. In addition to our limit of
> liability, we will pay all defense costs we incur. *Our
> duty to settle or defend ends when our limit of liability
> for this coverage has been exhausted.* (emphasis added).

The Pennsylvania Supreme Court has enunciated the prin-
ciples for interpreting contracts of insurance as follows:

> The task of interpreting a contract is generally performed
> by a court rather than by a jury. The goal of that task is,
> of course, to ascertain the intent of the parties as mani-
> fested by the language of the written instrument. Where
> a provision of a policy is ambiguous, the policy provision
> is to be construed in favor of the insured and against the
> insurer, the drafter of the agreement. Where, however,

---

1. Before these motions were argued, the dram shop actions were
discontinued.

the language of the contract is clear and unambiguous, a court is required to give effect to that language. "[I]n the absence of proof of fraud, 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.' "

*Standard Venetian Blind Co. v. American Empire Ins.,* 503 Pa. 300, 304–305, 469 A.2d 563, 566 (1983) (citations omitted).

Appellants contended in the trial court that the language of the policy was ambiguous and, therefore, should be construed against the insurer so as to require Ohio Casualty to pay the costs of defending the actions in which Mark Maguire had been joined as an additional defendant. The learned trial judge was not impressed by this argument. He found the policy language, taken in its totality, "to be as unambiguous in its meaning and intent as any string of Anglo–Saxon words in our experience has proven to be."

A similar argument was made with respect to an identical policy provision in *Pareti v. Sentry Indemnity Company,* 536 So.2d 417 (La.1988). In rejecting the argument, the Court said:

When the paragraph of the policy containing this language [identical to the Ohio Casualty policy] is read as a whole, there is no ambiguity. The promise to defend "any" covered claim is clearly qualified, almost immediately thereafter in the same paragraph, by the statement: "Our duty to defend or settle ends when our limit of liability ... has been exhausted." Read as a whole, the only reasonable interpretation of this section is that the insurer will defend any claim, *but* the defense obligation will terminate if and when the insurer's policy limits are exhausted. These provisions are not subject to more than one reasonable interpretation. The policy in this regard is not ambiguous.

*Id.* at 420–421. See also: *Godur v. Travelers Indemnity Company,* 567 So.2d 1028 (Fla.Dist.Ct.App.1990) (identical

policy provision contained "clear and unambiguous language ... [and] should be given effect.").

▪ We agree with the analysis employed by the trial court and the Supreme Court of Louisiana. The language of the policy is clear. The insurer's duty to defend terminates upon exhaustion of policy limits. Therefore, we are commanded by the Supreme Court's holding in *Standard Venetian Blind Co. v. American Empire Ins.*, *supra*, to give effect to the plain meaning of the language limiting Ohio Casualty's obligation to defend actions brought against its insureds.

It may well be, in any event, that appellants have abandoned their argument that the policy language was ambiguous, for they have not pursued it in their appellate brief. See: *Ibn–Sadiika v. Riester*, 380 Pa.Super. 397, 401–402, 551 A.2d 1112, 1114 (1988); *Pelagatti v. Cohen*, 370 Pa.Super. 422, 430, 536 A.2d 1337, 1341 (1987). Instead, they argue on appeal that, under Pennsylvania law, an insurer's duty cannot validly be terminated by an exhaustion of policy limits.

This argument is contrary to the decision of the Court of Appeals for the Third Circuit in *Commercial Union Ins. v. Pittsburgh Corning Corp.*, 789 F.2d 214 (3d Cir.1986), a case arising out of Pennsylvania. There, the Court was confronted with an insuring agreement to indemnify the insured for all liability due to personal injury up to the policy limit and also "[w]ith respect to such insurance as is afforded by this policy, [to] defend any suit against the insured...." The Court observed that the insurer's duty to defend under the policy language "is linked to the duty to indemnify, and consequently ... absent other considerations, the insurer is not bound to defend where it cannot be bound to indemnify ... regardless of when the duty to indemnify comes to an end." [2] *Id.* at 218. Therefore, the Court concluded, the insurer had no duty to defend the insured once its liability limits had been reached by settle-

---

**2.** The policy language in the instant case, it may be observed, is even clearer than the policy language interpreted by the Third Circuit Court in the *Commercial Union Ins. Co.* case.

ment or judgment after the insurer had defended the claims in good faith. *Id.* at 219. [3]

■ We are mindful of the principle of law often repeated by Pennsylvania courts that the utmost fair dealing should characterize transactions between an insurance company and its insured. See: *Dercoli v. Pennsylvania Nat. Mut. Ins.*, 520 Pa. 471, 477, 554 A.2d 906, 909 (1989), quoting *Fedas v. Insurance Company of the State of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930). Our holding in the instant case does not violate this precept. Before an insurer will be excused from defending an action against an insured on whose behalf the insurer has already paid policy limits, the insurer must have acted in good faith. In holding that an insurer was relieved of its duty to defend upon paying policy limits in satisfaction of a judgment, the Supreme Court of New Hampshire observed, in *Lumbermen's Mutual Casualty Co. v. McCarthy*, 90 N.H. 320, 8 A.2d 750 (1939), as follows:

This does not necessarily mean that the insurer may elect to pay the full limit of its coverage to the insured and thereby cast upon his shoulders the full burden of investigation, settlement or defense from the beginning.... Neither do we mean to hold that an insurer may abandon its defense of a claim within the terms of its policy in midcourse and under circumstances which are prejudicial to the rights of the insured. Having elected to defend rather than to settle, the insurer's duty is to defend in good faith and with due diligence and in such a way as to protect the rights of the insured, but, having done so up to final judgment and then having paid that judgment and incidental expenses to the full limit of its obligation, we are of the opinion that it thereafter has no duty of defense.

*Id.* at 323, 8 A.2d at 752 (citations omitted).

■ The exercise of good faith prevents an insurer from entering into a dubious release in order to quickly

**3.** The Supreme Court of Georgia reached the same result under identical policy language in *Liberty Mutual Insurance Co. v. Mead Corporation*, 219 Ga. 6, 131 S.E.2d 534 (1963).

exhaust the limit of its liability to the insured. "An insurer which hastily enters a questionable settlement simply to avoid further defense obligations under the policy clearly is not acting in good faith and may be held liable for damages caused to its insured." *Pareti v. Sentry Indemnity Company, supra,* 536 So.2d at 423. Additionally,

> the insurer must make every effort to avoid prejudicing the insured by the timing of its withdrawal from the litigation. The insurer should make allowances for the time that the insured will need to retain new counsel, and should continue to represent the insured after the settlement, if necessary, until new counsel can be retained.

*Id.* (footnote omitted). Similarly, the requirement of good faith prevents an insurer from tendering the amount of its policy limit into court pending a determination of liability in order to avoid its duty to defend. See: *Stanley v. Cobb,* 624 F.Supp. 536 (1986); *Anderson v. U.S. Fidelity & Guaranty Co.,* 177 Ga.App. 520, 339 S.E.2d 660 (1986); *Samply v. Integrity Ins. Co.,* 476 So.2d 79 (Ala.1985). Indeed,

> any payment of the policy limits which does not release the insured from a pending claim (e.g., unilateral tender of policy limits to the court, the claimant or the insured), even if sufficient to terminate the duty to defend under the wording of the policy involved, raises serious questions as to whether the insurer has discharged its policy obligations in good faith.

*Pareti v. Sentry Indemnity Company, supra* at 424.

██ In the instant case, Ohio Casualty dealt with its insureds in complete good faith. The settlement of the claim for policy limits was finalized before any death action had been filed on behalf of the decedent's heirs and estate. When it paid out policy limits in settlement of the death claim, Ohio Casualty took releases which protected its insureds against any further claims, of any nature whatsoever, by the decedent's heirs and estate. Thus, Ohio Casualty did not abandon its insureds "mid-course" or force them to shoulder the burden of investigating and/or defending the death claim. Even though Mark Maguire could thereafter

be joined as an additional defendant in the estate's action against the providers of alcohol to determine issues of joint liability, Maguire was protected against further liability by the terms of the releases which Ohio Casualty had obtained. Therefore, one can only conclude that Ohio Casualty's settlement of claims against its insureds was done in good faith and in a manner calculated to protect them against any further liability. The policy language, under these circumstances, must be given effect. Having exhausted its duty to indemnify, Ohio Casualty's duty to defend its insureds came to an end.

The declaratory judgment entered by the trial court is affirmed.