NATIONWIDE PROPERTY AND
CASUALTY INSURANCE
COMPANY, Appellant,

v.

Jimmy McFARLAND and Donald
Mashewske, Appellees.

No. 05–93–01561–CV.

Court of Appeals of Texas,
Dallas.

Oct. 18, 1994.

Rehearing Overruled Nov. 28, 1994.

Michael W. Minton, Barbknecht & Tait, P.C., Dallas, for appellant.

Steven Aldous, Richard Sayles, Sayles & Lidji, Dallas, for appellees.

Before LAGARDE, BARBER and WHITTINGTON, JJ.

## OPINION

WHITTINGTON, Justice.

In this appeal, we must decide whether Nationwide Property and Casualty Insurance Company (Nationwide) has a duty to defend Donald Mashewske under an automobile insurance policy issued to Jimmy McFarland. In the trial court, Nationwide sought a declaration that Mashewske was not a "covered person" under the policy. McFarland counterclaimed against Nationwide seeking the opposite declaration. Nationwide and McFarland both filed motions for summary judgment. After a hearing, the trial court granted McFarland's motion and denied Nationwide's. On appeal, Nationwide asserts two points of error (1) the trial court lacked subject-matter jurisdiction to grant McFarland's motion, and (2) the trial court erred in granting summary judgment for McFarland and denying Nationwide's motion because (a) Mashewske was not a "covered person" under the policy, and (b) the policy's "unauthorized use" exclusion deprived Mashewske of coverage under the policy. We conclude the trial court had subject-matter jurisdiction over McFarland's counterclaim. We further conclude that Mashewske was not a "covered person" under the policy. Thus, we reverse that portion of the trial court's order granting McFarland summary judgment on this point. We render judgment in favor of Nationwide on the coverage issue.

## BACKGROUND

On March 16, 1991, McFarland was working underneath his 1987 Toyota Supra. The car was sitting up on jacks. While McFarland was underneath the car, Mashewske got in the car to see if it would start. When Mashewske shifted the car into neutral, it rolled backward, fell off the jacks, and landed on McFarland. McFarland sustained injuries from the accident.

At the time of the accident, McFarland was covered by an automobile insurance policy issued by Nationwide. The policy covered McFarland, as the named insured, and any other person "using" the covered auto. The policy identified McFarland's 1987 Toyota as the "covered auto." McFarland sued Mashewske for negligence. Mashewske tendered his defense to Nationwide, claiming he was entitled to coverage under McFarland's policy because he was "using" the covered auto at the time of the accident. Nationwide agreed to provide Mashewske's defense under a reservation of rights.

On December 17, 1992, Nationwide filed this suit against McFarland and Mashewske, seeking a declaration that it had no duty to defend Mashewske in McFarland's suit. Nationwide maintained that Mashewske was not a "covered person" under McFarland's policy because Mashewske was not "using" the automobile when he shifted the car into neutral. Nationwide maintained that Mashewske's actions constituted "maintenance" of the covered auto, not "use."

McFarland generally denied Nationwide's allegations and counterclaimed for a declaration that Nationwide had a duty to defend and indemnify Mashewske under McFarland's policy. Mashewske did the same. Shortly thereafter, Nationwide and McFarland filed cross-motions for summary judgment seeking a declaration of Nationwide's duties, if any, under the policy. Nationwide later filed a supplement to its original summary-judgment motion, alleging for the first time that the policy's "unauthorized use" exclusion deprived Mashewske of coverage.

After a hearing, the trial court denied Nationwide's motion and granted McFarland's. The court's order, as modified, stated:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED as follows:

1. That Plaintiff Nationwide Property and Casualty Insurance Company take nothing against Defendants Jimmy McFarland and Donald Mashewske;

2. That Defendant Jimmy McFarland be granted judgment declaring that *Don-*

*ald Mashewske is a covered person* under Nationwide Property and Casualty Insurance Company's Texas Personal Auto Policy, No. 7842–468284, issued to Jimmy McFarland; *no exclusions contained within the policy are applicable* to deprive Donald Mashewske of coverage under the policy; and *Nationwide Property and Casualty Insurance Company is obligated to defend and indemnify Donald Mashewske.*

(emphasis added). The court's order also awarded attorney's fees to McFarland. After Mashewske nonsuited his counterclaim, Nationwide appealed the trial court's order.

## STANDARD OF REVIEW

The standard for reviewing a summary judgment is well established:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, we take the evidence favorable to the nonmovant as true.

3. We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.

*See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■■■ To prevail on summary judgment, a plaintiff (or in this case a cross-plaintiff) must conclusively prove all elements of its cause of action as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); TEX. R.CIV.P. 166a(c). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). When, as in this case, both parties file motions for summary judgment and one is granted and one is denied, we review all questions presented. *See Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1958). If we conclude the trial court committed reversible error, we render the judg-

ment the trial court should have rendered. *See id.*

The purpose of the summary-judgment rule is not to provide a trial by deposition or affidavit. Rather, the purpose of the rule is to provide a method of summarily ending a case that involves only a question of law or no genuine issue of fact. *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962); *Port Distrib. Corp. v. Fritz Chem. Co.,* 775 S.W.2d 669, 670 (Tex.App.—Dallas 1989, writ dism'd by agr.). The rule is not intended to deprive litigants of their right to a full hearing on the merits of any real fact issue. *See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

## STANDING

■■ In its first point of error, Nationwide contends the trial court lacked subject-matter jurisdiction to grant McFarland's summary judgment motion. Specifically, Nationwide argues that McFarland lacked standing to assert Mashewske's rights under McFarland's policy. Nationwide did not raise the issue of McFarland's standing in the trial court. Citing *Texas Ass'n of Business v. Texas Air Control Board,* 852 S.W.2d 440, 445–46 (Tex.1993), Nationwide contends that standing is a component of subject-matter jurisdiction and that it may therefore be raised for the first time on appeal. We agree that the issue of subject-matter jurisdiction may be raised for the first time on appeal. Nevertheless, we reject Nationwide's claim that McFarland's "lack of standing" in this case deprived the trial court of subject-matter jurisdiction.

■■ Standing concerns a party's ability to invoke the court's subject-matter jurisdiction. *Texas Ass'n of Business,* 852 S.W.2d at 441 n. 1. To establish standing in Texas, a party must show (1) a real controversy exists between the parties, and (2) the controversy will be actually determined by the judicial declaration sought. *Id.* at 446. In this case, Nationwide's action for declaratory judgment against McFarland and Mashewske presented a real controversy between the parties (*i.e.,* whether coverage existed under McFarland's policy) that would actually be determined by the judicial declaration sought.

Nationwide does not contest this point and, in fact, asserts in its petition that both McFarland and Mashewske were "interested and necessary" parties to the suit. Because Nationwide's action presented a real controversy between the parties that would actually be determined by the judicial declaration sought, the trial court had subject-matter jurisdiction over the case.

■ The question presented is whether McFarland's "lack of standing" to assert Mashewske's rights under the policy affected the trial court's subject-matter jurisdiction over the suit. We conclude that it did not. In *Texas Ass'n of Business*, the Texas Supreme Court noted that, once a trial court's subject-matter jurisdiction over a case is properly invoked by a plaintiff, the court's jurisdiction will not be affected by the status of defendants or intervenors aligned with defendants. *Id.* at 441 n. 1. In that case, as in this, the trial court granted the relief sought by the defendants on their counterclaim for declaratory relief. The supreme court refused to question the defendant-intervenors' standing to pursue their counterclaim. In so doing, the court noted that a court's subject-matter jurisdiction, once properly invoked, cannot be affected by the status of other parties to the suit. *Id.* This is precisely the situation presented here.

■ Nationwide seeks to deny the trial court subject-matter jurisdiction over McFarland's counterclaim solely on the basis of McFarland's "lack of standing." As noted above, McFarland's status as a defendant in Nationwide's suit cannot affect the trial court's proper exercise of subject-matter jurisdiction over the parties' action. Accordingly, we conclude that regardless of McFarland's standing to assert Mashewske's rights under the policy, the trial court had subject-matter jurisdiction over the suit. *See Texas*

*Ass'n of Business*, 852 S.W.2d at 441 n. 1. We overrule this portion of Nationwide's first point of error.[1]

## DUTY TO INDEMNIFY

■ In its next argument under the first point of error, Nationwide contends the trial court erred in finding Nationwide had a duty to indemnify Mashewske. Nationwide asserts the trial court lacked subject-matter jurisdiction because this issue was not yet ripe for determination. We agree that Nationwide's duty to indemnify was not ripe for determination at the time summary judgment was entered.

At the time of the trial court's judgment, no liability had yet been imposed against Mashewske in McFarland's underlying suit. It is well settled that a trial court is without authority to decide an insurer's duty to indemnify in the absence of a final judgment in the underlying tort action. *See Central Sur. & Ins. Corp. v. Anderson*, 445 S.W.2d 514, 515 (Tex.1969); *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333–34 (Tex.1968) (holding that declaration of insurer's liability upon judgment that *might* thereafter be rendered is purely advisory and beyond power and jurisdiction of district court). Because no liability had been imposed against Mashewske at the time of the trial court's entry of judgment, we conclude this issue was not yet ripe for determination. We sustain this portion of Nationwide's first point of error and reverse the trial court's judgment to the extent it finds a duty to indemnify Mashewske under McFarland's policy.

## DUTY TO DEFEND

In its second point of error, Nationwide asserts the trial court erred in concluding that Mashewske was a "covered person" un-

1. We note this conclusion conforms with another well-settled principle of Texas law: that a counterclaim for declaratory relief presents a justiciable controversy when the right sought to be declared in the counterclaim has been drawn into question by the opponent's action for declaratory judgment. *See Empire Life Ins. Co. v. Moody*, 584 S.W.2d 855, 858 (Tex.1979); *see also Southern Methodist Univ. v. Times Herald Printing Co.*, 729 S.W.2d 129, 129–30 (Tex.App.—Dallas 1987, no writ). Here, Nationwide filed suit for declar-atory judgment against McFarland and Mashewske, seeking a declaration of Nationwide's duties, if any, under McFarland's policy. This action clearly called into question the issue raised by McFarland's counterclaim, *i.e.*, whether Mashewske was covered under the policy. Because Nationwide's declaratory judgment action drew the coverage issue into question, McFarland was entitled to assert a counterclaim for declaratory judgment on this issue.

der McFarland's insurance policy. Nationwide claims that Mashewske's actions at the time of the accident amounted to "maintenance" of the car rather than "use," and it therefore had no duty to defend Mashewske under the terms of the policy. Nationwide's policy specifically covered, as omnibus insureds, only those persons "using" the covered auto.

McFarland makes three arguments in response. First, Nationwide's narrow interpretation of the term "use" directly conflicts with the policy expressed in the Texas Safety Responsibility Act. Second, Nationwide's attempt to qualify the term "use" constitutes an impermissible attempt to insert an implied exclusion in the policy. Finally, the term "use" is susceptible to more than one reasonable interpretation in this case, and the term must therefore be construed to provide coverage for Mashewske as an insured.

The insurance policy in effect between Nationwide and McFarland at the time of the accident stated, in pertinent part, that:

> [Nationwide] will pay damages for bodily injury or property damage for which any *covered person* becomes legally responsible because of an auto accident.... [Nationwide] will settle or defend, as [Nationwide] considers appropriate, any claim or suit asking for these damages. In addition to [Nationwide's] limit of liability, [Nationwide] will pay all defense costs [Nationwide] incurs. [Nationwide's] duty to settle or defend ends when [Nationwide's] limit of liability for this coverage has been exhausted.

(emphasis in original). The policy defines "covered person" as the named insured or any family member of the named insured for the ownership, maintenance or use of any auto *and* any person *using* the named insured's covered auto. Thus, the policy contains the usual omnibus provision extending coverage to all those *using* the covered auto.

Mashewske was neither the named insured under the policy nor a family member of the named insured. Thus, Mashewske must have been "using" McFarland's car at the time of the accident to be covered under McFarland's policy. Whether Mashewske's actions amounted to *use* of the vehicle is the

precise question that must be resolved in this appeal.

## Applicable Law

In ascertaining the scope of an insurer's duty to defend under a particular insurance policy, courts look to the language of the policy itself and the allegations in the complaint against the insured. *Fidelity & Guar. Ins. Underwriters v. McManus*, 633 S.W.2d 787, 788 (Tex.1982). In so doing, courts may look only to the factual allegations contained in the pleadings. They may not consider the truth or veracity of those allegations, the parties' knowledge or beliefs as to those allegations, or any legal determination of the actual facts. *See Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex.1965).

In construing the language used in a particular policy, courts look to the evident intent of the parties. *State Farm Mut. Auto. Ins. Co. v. Pan American Ins. Co.*, 437 S.W.2d 542, 544 (Tex.1969); *Aetna Life Ins. Co. v. Adams*, 447 S.W.2d 453, 454 (Tex.Civ.App.—Beaumont 1969, writ ref'd n.r.e.). We construe all parts of the policy together to effectuate this intent. *See American–Amicable Life Ins. Co. v. Lawson*, 419 S.W.2d 823, 826 (Tex.1967). The intent of the parties is derived by looking at the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto. *Pan American*, 437 S.W.2d at 544; *Adams*, 447 S.W.2d at 454. Where the language is plain and unambiguous, there is no occasion for construction and the language must be given its plain meaning. *Pan American*, 437 S.W.2d at 544. Only when the words admit of two constructions will the courts adopt the interpretation most favorable to the insured. *Pan American*, 437 S.W.2d at 544; *Adams*, 447 S.W.2d at 454.

The term "use" under an automobile insurance policy has been described as the general catchall of an omnibus insurance clause, designed and construed to include all proper uses of the vehicle *not falling within other terms of definition such as ownership*

*and maintenance. See Pan American,* 437 S.W.2d at 545; *see also State Farm Mut. Auto. Ins. Co. v. O'Brien,* 380 F.Supp. 1279, 1281 (D.Minn.1974). The terms "maintenance" and "use" are distinct terms in an automobile insurance policy. *See Pan American,* 437 S.W.2d at 545 (noting that term "maintenance" is expressly *included* in broadly stated insuring clause of policy (covering damages "arising out of the ownership, maintenance, or use of the vehicle") and expressly *excluded* from more narrowly drawn omnibus clause of policy (insuring only those "using" covered auto)). Before an individual becomes an omnibus insured under the typical automobile policy (such as the one here at issue), there must be a "use" of the covered auto, as distinguished from a "maintenance" of it. *See Universal Underwriters Ins. Co. v. Hartford Accident & Indem. Co.,* 487 S.W.2d 152, 155 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

Black's Law Dictionary defines "use" as: "convert[ing] to one's service, to employ, to avail one's self of." BLACK'S LAW DICTIONARY 1381 (6th ed. 1990). Webster's Ninth New Collegiate Dictionary likewise defines "use" to mean "to put into action or service." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1299 (1985). Although the parties have not cited us to any case where a Texas court has defined the term "use" in the context here addressed,[2] other jurisdictions have defined the term in the context of an automobile insurance policy as the "employment of a vehicle as a means of transportation, or some other purpose incident to transportation." *See, e.g., Wagenman v. State Farm Ins.,* 726 F.Supp. 1239, 1242 (D.Utah 1989); *Truck Ins. Exch. v. Aetna Casualty & Sur. Co.,* 13 Wash.App. 775, 538 P.2d 529, 533 (1975).

■ The term "maintenance" has been described by the Texas Supreme Court as including all acts which come within its ordinary scope and meaning. *See Pan American,* 437 S.W.2d at 545. To "maintain" means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse, or cessation from that state or condition. *Id.* To determine whether a particular act constitutes "use" as opposed to "maintenance," courts generally look to the *purpose* behind the injury-causing act. *Id.* (purpose of refueling car was to enable it to perform its transportation functions); *Queen Ins. Co. v. Creacy,* 456 S.W.2d 538, 541 n. 4 (Tex.Civ. App.—San Antonio 1970, no writ) (recognizing *Pan American's* reliance on purpose of injury-causing act); *see also Wagenman,* 726 F.Supp. at 1242.

### Application of Law to Facts

■ McFarland's petition specifically alleges that Mashewske was negligent in "manipulating the controls" of McFarland's car while McFarland lay underneath the car. While McFarland contends Mashewske's "manipulation" of the controls amounted to "use" of the covered auto, we do not agree. Our review of the language used in the Nationwide policy, as well as the relevant case law construing similar provisions, convinces us that Mashewske was not in fact "using" the car at the time of the accident.

The Texas Supreme Court recognized the difference between the terms "maintenance" and "use" in *Pan American.* In that case, the court considered whether a gas station attendant's actions in refueling an automobile constituted "use" of the automobile such that the attendant was entitled to coverage under the automobile owner's insurance policy. The policy in *Pan American,* like the one in the instant suit, provided coverage for the named insured as well as all those "using" the covered auto with the owner's permission. In concluding that the attendant was not covered by the policy at issue, the Texas Supreme Court drew a distinction between activities which constituted "use" of an automobile and those which constituted "maintenance." The court stated:

[i]t appears inescapable that the replacement of fuel which has been exhausted with use and without which a motor vehicle is inoperative, is a species of maintenance in the same sense as repairing the carburetor as a part of the fuel system, or inflating a flat tire, or changing the oil in the crankcase of the engine. The *only*

2. Our research likewise has revealed no such case.

*purpose of the act of refueling* by Western was to capacitate the Liggett vehicle to perform its transportation functions. This act, standing alone, constituted "maintenance" of the vehicle and was a distinct relationship expressly included within the terms of the insuring clause but excluded, by its omission, from the coverage of the omnibus clause.

*Pan American,* 437 S.W.2d at 545 (emphasis added).

While we recognize that the *Pan American* case is factually distinguishable from the instant suit, we nevertheless find its language regarding the *purpose* of the attendant's actions to be instructive. When determining the nature of a person's actions, courts must look beyond the acts themselves to the intent and purpose behind the acts. We find this conclusion to be in accord with decisions from a number of other jurisdictions, all of which suggest that when determining whether an act constitutes "maintenance" versus "use," courts must consider not only the setting in which the particular acts take place, but also the purpose behind the particular acts. *See Great American Indem. Co. v. Saltzman,* 213 F.2d 743, 747 (8th Cir.), *cert. denied,* 348 U.S. 862, 75 S.Ct. 85, 99 L.Ed. 679 (1954) (term "use" must be considered with regard to setting in which it is employed); *O'Brien,* 380 F.Supp. at 1281–82 (concluding individual's actions were not "use" because no reasonable purpose could have been accomplished by actions); *United Servs. Auto. Ass'n v. United States Fire Ins. Co.,* 36 Cal.App.3d 765, 111 Cal.Rptr. 595, 597 (1973) (when determining whether individual's actions constitute "use," court must consider individual's purpose and intent behind

taking actions); *Chase v. Dunbar,* 185 So.2d 563, 570 (La.Ct.App.1966) (determining whether act is "use" or "maintenance" requires review of circumstances of case including intent, purpose, and objective of person performing act); *see generally Wagenman,* 726 F.Supp. at 1242.

We conclude that, under the circumstances of this particular case, Mashewske's actions constituted "maintenance" of the car, not "use." The petition filed against Mashewske indicates that at the time of the accident, McFarland was *working* underneath the car. The petition states that McFarland *allowed* Mashewske to enter the car to "manipulate its controls" while he was underneath the car and the car was up on jacks. Mashewske's actions in "manipulating" the car's controls while McFarland lay underneath the car could only have been intended to assist McFarland in the maintenance of the car. Thus, Mashewske's actions formed an integral part of the overall maintenance being performed on the vehicle. We note, as did the court in *O'Brien,* that no reasonable purpose (other than simply maintenance) could have been accomplished by Mashewske's shifting the car into neutral while it was immobilized up on jacks. *See O'Brien,* 380 F.Supp. at 1281 (noting that if the term "use" is construed to embrace all of its possible meanings and ramifications, practically every activity of mankind would amount to a "use"). Because we conclude that the purpose of Mashewske's actions was not to "use" the vehicle, but rather to help "maintain" it, we conclude that Mashewske was not covered as an omnibus insured under the terms of McFarland's policy.[3] We conclude that Nationwide has no duty to defend Mashewske.

3. We note that our decision today is in line with a number of decisions from other courts addressing factually similar circumstances. In *Federal Ins. Co. v. Forristall,* 401 S.W.2d 285 (Tex.Civ. App.—Beaumont 1966, writ ref'd n.r.e.), for example, the Beaumont Court of Appeals found that, under an exclusion in a Texas standard comprehensive dwelling policy, an insured's actions in entering the plaintiff's automobile, releasing the gearshift from park, and pushing the car a short distance did not constitute "use" of the vehicle. *Id.* at 289. Likewise, in *Truck Insurance Exchange,* the court held that a mechanic's act of starting up a car while performing a tune-up was not a "use" of the vehicle within the

terms of the policy's "automobile business" exclusion. In reaching its decision, the court concluded the mechanic's actions constituted "maintenance" of the car rather than "use" because the actions took place during the servicing of the vehicle. *Truck Ins. Exch.,* 538 P.2d at 532. Finally, in *Chase,* the court concluded that a "mechanic's" attempt to start a stalled car did not constitute "use" of the car. In concluding the actions constituted "maintenance," the court noted that "[t]he actions of the 'mechanics' . . . were in essence a test to determine whether the engine could be made to run or whether adjustments or repairs were necessary to make it functional." *Chase,* 185 So.2d at 570. Under such

■ Additionally, we reject McFarland's contentions that the reasoning here adopted conflicts with the policy announced in the Texas Safety Responsibility Act (the Act) and various rules of construction applicable to insurance policies. The Act requires an owner's liability insurance policy to:

pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles....

Tex.Rev.Civ.Stat.Ann. art. 6701h, § 21(b)(2) (Vernon Supp.1994). McFarland contends that the "important part" of this provision is the portion requiring insurance companies to pay for damages arising out of "ownership, maintenance or use" of the motor vehicle. McFarland contends, based on this language, that coverage must be provided "without regard to" whether the actions giving rise to such damages resulted from "maintenance," "use," or both. We do not agree.

The statute specifically requires insurers to pay all sums which *insureds* become legally obligated to pay as damages arising out of the ownership, maintenance, or use of motor vehicles. The first portion of section 21(b)(2) specifically identifies as insureds those per-

sons named in the policy and those persons *using* a motor vehicle with the named insured's permission. We believe the language of the Act is clear: it requires coverage only for those persons specifically named in the insurance policy and those *using* a motor vehicle with the named insured's permission. In this regard, we note that the Act specifically exempts from its requirements those persons, like Mashewske, in possession of a non-owned vehicle for the sole purpose of maintenance or repair. *See* Tex.Rev.Civ. Stat.Ann. art. 6701h, § 1D–2 (Vernon Supp. 1994). Our interpretation of the policy in this case thus comports with the provisions of the Act.[4]

■ Next, we reject McFarland's claim that our interpretation of the policy is improper because it inserts an implied exclusion in the policy. In his brief, McFarland relies on *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991) for the proposition that an insurer's intent to exclude coverage must be expressed in clear and unambiguous terms in the policy. We find McFarland's reliance on this case to be misplaced. By reading the term "use" to mean acts other than "maintenance," we are not implying an exclusion into the policy at issue. Instead, we are simply construing the plain, unambiguous terms of the policy presented, as those terms have

---

circumstances, the court concluded that the attempt to start the vehicle was "maintenance," not "use." *Id.; see also Western Casualty & Sur. Co. v. Crawford*, 635 F.2d 667, 669–70 (8th Cir. 1980) (concluding that individual's operation of hydraulic hoist was not "use" of car); *Traveler's Ins. Co. v. Northwestern Mut. Ins. Co.*, 27 Cal. App.3d 959, 104 Cal.Rptr. 283, 288 (1972) (concluding that mechanic was not "using" covered auto when changing tire on car up on jacks); *Wall v. Windmann*, 142 So.2d 537, 539 (La.Ct. App.1962) (holding starting of truck's motor at request of mechanic repairing engine constituted "maintenance" of car for purposes of "automobile business" exception). We believe these opinions to be well-reasoned and persuasive. Accordingly, we follow their lead and conclude that Mashewske's actions in "manipulating the controls" of McFarland's car constituted "maintenance" of the car, not "use."

**4.** We find the "family member exclusion" cases relied on by McFarland to be distinguishable. *See Segal v. Southern County Mut. Ins. Co.*, 832

S.W.2d 617 (Tex.App.—Dallas 1992, no writ); *National County Mut. Fire Ins. Co. v. Johnson*, 829 S.W.2d 322 (Tex.App.—Austin 1992), *aff'd*, 879 S.W.2d 1 (Tex.1993). In those cases, the exclusion at issue violated public policy because it sought to limit the coverage available to a named insured under the policy. Stated otherwise, the exclusion barred recovery for sums a named insured might otherwise be legally obligated to pay. This is a consequence the Act clearly intended to prohibit. *See* Tex.Rev.Civ.Stat. Ann. art. 6701h, § 21(b)(2) (Vernon Supp.1994) (requiring policy to pay on behalf of named insured *all sums* which named insured shall become legally obligated to pay). Unlike the exclusion considered in the cases above, the reading of the term "use" in this case does not limit the coverage available to a known insured under the policy. Instead, it addresses who is, *in the first instance*, an insured entitled to coverage under the policy. We see no potential policy problems inherent in our interpretation of the policy in this case.

been defined by the supreme court of this state. *See Pan American,* 437 S.W.2d at 545 (term "use" includes all proper uses of vehicle not falling within other terms of definition such as "maintenance"). Our conclusion that Mashewske's actions in maintaining McFarland's car were not covered under the terms of the policy simply gives effect to the supreme court's mandate. To hold otherwise would require insurers to qualify every term used in an insurance policy for fear that the failure to do so would result in endless liability.

Finally, with respect to McFarland's claim that the term "use" is subject to reasonable interpretation and thus should be construed in Mashewske's favor, we note that this rule of construction in favor of an insured applies only in cases where policy language is ambiguous. *See Pan American,* 437 S.W.2d at 544 (only when words admit of two constructions will court adopt one favoring insured). As already noted, the policy language at issue in this case is plain and unambiguous. The Texas Supreme Court has stated that the term "use" does not include acts of "maintenance." We are simply giving the term "use" the meaning adopted by the supreme court. Since no ambiguity exists in the language of McFarland's policy, we are not called upon to construe the policy in Mashewske's favor.

For the reasons stated, we conclude Mashewske was not a "covered person" under McFarland's policy and Nationwide therefore has no duty to defend Mashewske in the underlying action brought by McFarland. We reverse the trial court's order to the extent it holds otherwise. We sustain Nationwide's second point of error and render judgment on this point in favor of Nationwide.[5]

## McFARLAND'S ATTORNEY'S FEES

In its first point of error, Nationwide challenges the court's award of attorney's fees to McFarland on the ground that the trial court had no "subject-matter jurisdiction" to render a declaratory judgment in favor of McFarland on his counterclaim. This is Nationwide's sole argument with respect to attorney's fees on appeal. We have already concluded the trial court had subject-matter jurisdiction to address the duty to defend issue in this case. Thus, we reject Nationwide's argument that the fee award was improper.

 Additionally, we note that an alternative basis exists for the trial court's award in this case, *i.e.,* that McFarland was awarded fees based on his status as a defendant in Nationwide's declaratory judgment suit. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986); *Hartford Casualty,* 796 S.W.2d at 771 (recognizing that Declaratory Judgment Act authorizes award of attorney's fees in favor of *any* party to declaratory judgment action).[6] Nationwide has not challenged the propriety of the award on this basis. We may not reverse the trial court's judgment on the basis of unassigned error. *See American Gen. Fire & Casualty Co. v. Weinberg,* 639 S.W.2d 688, 689 (Tex.1982); *Moffitt v. DSC Fin. Corp.,* 797 S.W.2d 661, 664 n. 1 (Tex.App.—Dallas 1990), *writ denied per curiam,* 815 S.W.2d 551 (Tex.1991). Accordingly, we uphold the award of attorney's fees in favor of McFarland.

---

5. On cross-motions for summary judgment, we render the judgment the trial court should have rendered. *See Tobin,* 316 S.W.2d at 400. In its motion for summary judgment, Nationwide sought an award of attorney's fees. The trial court ordered that Nationwide "take nothing" in its suit against McFarland and Mashewske. Thus, the trial court denied Nationwide's request. Nationwide has not challenged on appeal the trial court's refusal to award attorney's fees. Consequently, we will not consider or remand Nationwide's request for attorney's fees, even though Nationwide has now prevailed on the merits. *See Hartford Casualty Ins. Co. v. Budget Rent-A-Car Sys.,* 796 S.W.2d 763, 771 (Tex. App.—Dallas 1990, writ denied) (citing *Larrum-*

*bide v. Doctors Health Facilities,* 734 S.W.2d 685, 687 (Tex.App.—Dallas 1987, writ denied) and *Norton v. Martin,* 703 S.W.2d 267, 273 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)).

6. The trial court's order does not state whether the attorney's fees were awarded to McFarland on the basis of his counterclaim for declaratory judgment or as a defendant in Nationwide's suit. The affidavit filed in support of the attorney's fees claim indicates that McFarland sought recovery of fees incurred in both defending Nationwide's suit and in prosecuting his own counterclaim.

On the issues of coverage of Donald Mashewske and Nationwide's duty to defend Mashewske under McFarland's policy, we reverse and render judgment in favor of Nationwide. We also reverse the trial court's judgment to the extent it finds a duty to indemnify Mashewske under McFarland's policy. In all other respects, we affirm the trial court's judgment.

The trial court's judgment is affirmed in part and reversed and rendered in part.