**AMERICAN STATES INSURANCE COMPANY OF TEXAS,** Appellant,

v.

**Eoline Smith ARNOLD and American Fire & Indemnity Insurance Company, Appellees.**

**No. 05–95–00706–CV.**

Court of Appeals of Texas, Dallas.

Aug. 9, 1996.

Rehearing Overruled Sept. 23, 1996.

E. Thomas Bishop, Mark D. Johnson, Alexander N. Beard, Dallas, E. Thomas Bishop, P.C., for Appellant.

Mary Lou Flynn–Dupart, Fred A. Simpson, Jackson & Walker, L.L.P., Houston, for Appellee.

Before OVARD, JAMES and HANKINSON, JJ.

## OPINION

HANKINSON, Justice.

This case involves a dispute between two insurance companies concerning the duty to defend an underlying automobile accident lawsuit. American Fire & Indemnity Insurance Company ("American Fire"), as assignee and subrogee of the rights of Eoline Smith Arnold, American Fire's insured, filed a lawsuit against American States Insurance Company of Texas ("American States"), alleging that American States breached its duty to defend Arnold, an additional insured under an American States automobile policy. In response to the lawsuit, American States contended that it had no duty to defend Arnold, because its defense obligation terminated under the policy when it exhausted the policy limits by settling all claims against the named insured, Bessie M. Mayes. American Fire and American States each moved for summary judgment on the policy interpretation question. The trial court granted American Fire's summary judgment motion and denied American States's motion. American

States appeals from that decision. We hold that under the unambiguous policy language at issue, the duty to defend terminates when the policy limits are exhausted; therefore, we reverse the trial court's judgment and render judgment in favor of American States.

## FACTUAL BACKGROUND

On January 30, 1989, Eoline Smith Arnold was involved in a two-car collision while driving an automobile owned by Bessie M. Mayes and in which Mayes was a passenger. Mayes's vehicle struck another vehicle driven by Michael Rhodes and in which Michael Cassady was a passenger. Both Cassady and Rhodes were injured. Mayes was killed in the accident.

American States insured Mayes's vehicle. The policy provided a $50,000 bodily injury policy limit per person, per occurrence, and included coverage for permissive drivers of Mayes's vehicle. Arnold was an additional insured or "covered person" under the American States policy because she was a permissive driver of Mayes's vehicle. American States's policy provided: "If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits." At the time of the accident, Arnold was also insured under her own automobile insurance policy issued by American Fire. That policy provided a $20,000 policy limit per person, per occurrence.

Cassady presented to American States his claims for property damage against both Arnold and Mayes's estate and a personal injury claim solely against Mayes's estate, all based on Mayes's negligent entrustment of the vehicle to Arnold. Cassady demanded American States's policy limits of $50,000 to settle the personal injury claims against Mayes's estate. Cassady did not present to American States his personal injury claim against Arnold. Instead, Cassady presented that claim to Arnold's insurer, American Fire. Cassady demanded American Fire's policy limits of $20,000 to settle the personal injury claim against Arnold.

Mayes's estate also asserted a wrongful death claim against Arnold. The estate initially presented the claim to American Fire, who referred it to American States. American States and the estate agreed to compromise the estate's claim against Arnold for $5,500, and American States agreed to pay its policy limits of $50,000 to secure the estate's release from Cassady's personal injury claim against Mayes's estate. American States also paid Cassady's property damage claim in the amount of $10,139.55, securing a release on behalf of both Mayes's estate and Arnold.

American Fire refused to settle Cassady's claim against Arnold. After American States settled his claim against Mayes's estate, Cassady sued Arnold. American Fire and Arnold demanded that American States defend Arnold in the lawsuit. Because American States had already exhausted its policy limits settling Cassady's claim against Mayes's estate, it refused to defend and indemnify Arnold. American States based its refusal to defend on specific language in its policy, which provided that American States's "duty to defend ends when [its] limit of liability for this coverage has been exhausted." American Fire defended Arnold in the Cassady lawsuit.

Despite its refusal to defend or indemnify Arnold, American States paid $20,000, an amount equal to American Fire's policy limits, to protect and release Arnold from Cassady's lawsuit. American States still refused, however, to pay any costs of defending Arnold in the Cassady lawsuit, asserting that the earlier exhaustion of its policy limits excused performance.

## PROCEDURAL BACKGROUND

American Fire brought this lawsuit against American States to recover its costs of defending Arnold in the Cassady lawsuit. American Fire asserted both contractual and extracontractual claims against American States. The contract claim alleged a breach of the insurance policy, and the extracontractual claims alleged violations of Texas Insurance Code article 21.21 and the Texas Deceptive Trade Practices–Consumer Protection Act, breach of the duty of good faith and fair dealing, breach of fiduciary duty owed to Arnold, intentional infliction of emotional distress, fraud and constructive fraud, and gross negligence. American States asserted a counterclaim against American Fire for reimbursement of the $20,000 indemnity it paid to protect Arnold's interests in the Cassady lawsuit.

American States moved for partial summary judgment on the grounds that: (1) the extracontractual claims were barred by limitations; (2) appellees were not entitled to a 180-day extension of the limitations period under article 21.21, section 16(d) of the Texas Insurance Code; (3) the claims of fraud and constructive fraud were improperly pleaded in the petition; (4) American Fire had no extracontractual claims, except as the assignee of Arnold; and (5) no valid tort action existed against American States to support an award of punitive damages. The trial court granted American States a partial summary judgment on the extracontractual claims, leaving pending only American Fire's breach of contract claim and American States's counterclaim for reimbursement.

The parties mediated the remaining claims and entered into a partial settlement agreement. The parties then presented their agreement to the trial court in an agreed order, which the trial court signed. The agreed order provided that the breach of contract claim "shall be" decided by the trial court on cross-motions for summary judgment. The order also provided that American Fire would recover contract damages in the amount of $13,697.32 if it prevailed on its motion for summary judgment. The order further dismissed with prejudice all American Fire and Arnold's other claims against American States and dismissed with prejudice American States's counterclaim against American Fire. Finally, the order severed American Fire's claim for attorneys' fees incurred in prosecuting this breach of contract action—a claim the parties agreed would be decided by binding arbitration if American Fire ultimately prevailed on its contract claim.

Both parties then moved for summary judgment on the breach of contract claim. The trial court granted American Fire's mo-

tion and denied American States's motion. As also contemplated by the settlement agreement and required by the agreed order signed by the trial court, American States brought this appeal.

## STANDARD OF REVIEW

This Court reviews a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *See Capitan Enters., Inc. v. Jackson,* 903 S.W.2d 772, 775 (Tex.App.—El Paso 1994, writ denied). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex.1993). In this case, the agreed order provided that the breach of contract claim "shall be" decided by the trial court on cross-motions for summary judgment. This Court, therefore, should decide all legal questions presented and may render the judgment the trial court should have rendered. *See Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988)(orig. proceeding).

## DISCUSSION

In its third and fourth points of error, American States asserts that the trial court erroneously ruled on the parties' cross-motions for summary judgment. American States argues in support of both points that the policy language terminating the duty to defend upon the payment of policy limits is unambiguous and that other courts specifically addressing this issue have held that similar language is unambiguous and precludes a duty to defend the additional insured. American Fire counters that the policy language is ambiguous, has more than one reasonable meaning, and should be interpreted to favor the claimed coverage for defense costs. The interpretation of the insurance policy in this case presents an issue of first impression in Texas.

The interpretation of insurance contracts in Texas is governed by the same rules as the interpretation of other contracts. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). In determining the scope of an insurer's duty to defend under a particular policy, courts look to the language of the policy itself and the allegations in the complaint against the insured. *Nationwide Property & Casualty Ins. v. McFarland,* 887 S.W.2d 487, 492 (Tex.App.—Dallas 1994, writ denied) (citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982)). In construing the language used in a particular policy, courts look to the written expression of the parties' intent; all parts of the policy must be construed together to effectuate this intent. *Forbau,* 876 S.W.2d at 133; *McFarland,* 887 S.W.2d at 492.

The intent of the parties is derived by examining the words used, the subject matter to which they relate, and the matters naturally or usually incident to them. *McFarland,* 887 S.W.2d at 492. Where the language is plain and unambiguous, it must be given its plain meaning. *Id.* Language in insurance provisions is ambiguous when an uncertainty exists about which of two or more meanings was intended; only then will the courts adopt the interpretation most favorable to the insured. *See id.* The insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation creates an ambiguity. *Forbau,* 876 S.W.2d at 134.

The operative language in this policy provided:

*PART A: LIABILITY COVERAGE: INSURING AGREEMENT*

We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. Property damage includes loss of use of the damaged property. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. *Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.*

(emphasis added). Through the unambiguous language of the insuring agreement, American States promised to settle or defend any claim or lawsuit for damages covered under the policy. American States further

promised to pay all defense costs in addition to the policy's limit of liability. The promise to defend is immediately qualified in the same paragraph by the statement, "Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted." The language manifests the parties' intent to limit the duty to defend to the time before policy limits are exhausted. *See Forbau*, 876 S.W.2d at 133; *McFarland*, 887 S.W.2d at 492.

This policy language can be characterized only as precise, plain, and clear. Read as a whole, these provisions are not subject to more than one reasonable interpretation; therefore, the policy is not ambiguous. *See Forbau*, 876 S.W.2d at 133; *McFarland*, 887 S.W.2d at 492. We hold that the only reasonable interpretation of this policy language is that the insurer will defend or settle any claim, but the defense obligation will terminate if and when the insurer's policy limits are exhausted.[1] *See Forbau*, 876 S.W.2d at 133; *McFarland*, 887 S.W.2d at 492.

■ American Fire asserts that this interpretation will frustrate public policy, as expressed in the Texas Motor Vehicle Safety Responsibility Act ("the Act"),[2] by allowing American States to exhaust its bodily injury policy limits without paying $20,000 under Mayes's policy to settle Cassady's personal injury claims against Arnold. American Fire contends the maximum bodily injury policy limit paid on behalf of Mayes was $30,000, resulting in American States's gratuitous payment of $20,000 on Mayes's behalf. Thus, American Fire argues, American States's duty to defend Arnold existed after it paid the $50,000 policy limits to settle Cassady's claims against Mayes's estate because American States failed to reserve or to pay, before Cassady's suit, the $20,000 coverage on Arnold's behalf. We disagree.

■ The Act requires proof of financial responsibility that may be established by an insurance policy giving owners and operators of nonexempt motor vehicles the ability to respond in damages for all losses resulting from the ownership, maintenance, or use of a motor vehicle. *See Segal v. Southern County Mut. Ins. Co.*, 832 S.W.2d 617, 621 (Tex. App.—Dallas 1992, no writ). An insurance policy must with respect to each motor vehi-

---

1. Our decision today comports with the decisions of other courts construing the same or similar policy language. *See, e.g., Johnson v. Continental Ins. Cos.*, 202 Cal.App.3d 477, 248 Cal.Rptr. 412, 414 (1988) (policy language unambiguous; duty to defend terminates when policy limits paid); *Underwriters Guar. Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 578 So.2d 34, 35 (Fla.Dist.Ct.App. 1991) (duty to defend all actions terminates upon payment of policy liability limits); *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill. Dec. 684, 697–99, 514 N.E.2d 150, 163–65 (1987) (obligation to defend all actions, including pending actions, limited to time before payment of judgment or settlement exhausting policy limits). *Cf. Heredia v. Farmers Ins. Exch.*, 228 Cal. App.3d 1345, 279 Cal.Rptr. 511, 518 (1991) (language not an exclusion under policy but simply establishes order and priority of available coverage); *Godur v. Travelers Indem. Co.*, 567 So.2d 1028, 1030–31 (Fla.Dist.Ct.App.1990) (in absence of bad faith, insurer relieved of duty to defend when it paid policy limits through settlement and obtained a release on behalf of insured); *Anderson v. United States Fidelity & Guar. Co.*, 177 Ga.App. 520, 339 S.E.2d 660, 661 (1986) (in terminating duty to defend, "exhaust" means payment of settlement or judgment, wholly depleting policy amount which then discharges duty to defend insured); *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420–21 (La.1988) (holding policy unambiguous; defense obligation terminates when insurer's policy limits exhausted through good faith settlement); *Aetna Casualty & Sur. Co. v. Sullivan*, 33 Mass.App.Ct. 154, 597 N.E.2d 62, 66 (1992) (insurer's tender of policy limits does not terminate duty to defend unless payment made after judgment or settlement); *Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387, 390 S.E.2d 150, 155 (1990) (policy language ambiguous such that unilateral tender of policy limits without effecting settlement does not terminate duty to defend); *Maguire v. Ohio Casualty Ins. Co.*, 412 Pa.Super. 59, 602 A.2d 893, 895 (insurer excused from duty to defend when paid policy limits while acting in good faith), *appeal denied*, 532 Pa. 656, 615 A.2d 1312 (1992); *Viking Ins. Co. v. Hill*, 57 Wash.App. 341, 787 P.2d 1385, 1390 (1990) (policy may specifically provide for termination of duty to defend upon payment of policy limits, but public policy requires insurer to act in good faith in interest of insured).

2. Act of June 7, 1951, 52nd Leg., R.S., ch. 498, §§ 1, 21, 1951 Tex. Gen. Laws 1210, 1211, 1220, *amended by* Act of May 30, 1983, 68th Leg., R.S., ch. 535, §§ 1, 5, 1983 Tex. Gen. Laws 3122, 3122, 3129, *repealed by* Act of May 21, 1995, 74th leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1870, 1870–71 (current versions at Tex. Trans. Code Ann. §§ 601.072(a)(1), 601.076(2) (Vernon Pamph.1996)).

cle provide a minimum of $20,000 coverage for bodily injury to one person in one accident, and under its terms, must pay on behalf of the named insured and any other person using a covered motor vehicle with the express or implied permission of the named insured. Act of June 7, 1951, 52nd Leg., R.S., ch. 498, §§ 1, 21, 1951 Tex. Gen. Laws 1210, 1211, 1220 (repealed 1995) (current versions at TEX. TRANS. CODE ANN. §§ 601.072(a)(1), 601.076(2) (Vernon Pamph. 1996) ("pay, on behalf of the named insured *or* another person") (emphasis added)). "One person in one accident" refers to the person actually involved and physically or emotionally injured in the accident. *See McGovern v. Williams,* 741 S.W.2d 373, 374–75 (Tex.1987) (holding loss of consortium not a bodily injury for purposes of recovery under the Act). American States's policy provided for limited liability:

> If separate limits of liability for bodily injury and property damage liability are shown in the Declarations for this coverage the limit of liability for "each person" for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. The limit of liability shown in the Declarations for "each accident" for property damage liability is our maximum limit of liability for all damages to all property resulting from any one auto accident.
>
> If the limit of liability shown in the Declarations for this coverage is for combined bodily injury and property damage liability, it is our maximum limit of liability for all damages resulting from any one auto accident.
>
> This is the most we will pay regardless of the number of:
>
> 1. Covered persons;
> 2. Claims made;
> 3. Vehicles or premium shown in the Declarations; or
> 4. Vehicles involved in the auto accident.
>
> We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability.

As owner of the vehicle, Mayes was a "covered person" under her policy. As a permissive user of the vehicle, Arnold was also a "covered person" under Mayes's policy. The policy expressly limited liability to each person injured in any one accident, regardless of the number of covered persons. The policy also provided a minimum of $20,000 coverage for Cassady's injuries resulting from this accident, as required by the Act. When American States paid Cassady its policy limits, that amount included the $20,000 coverage required under the Act. The liability limitation is not enlarged simply because Cassady could have sued two covered persons under the policy. *See Manriquez v. Mid-Century Ins. Co.,* 779 S.W.2d 482, 485 (Tex.App.—El Paso 1989, writ denied) (when two covered persons exist under policy, $50,000 liability limitation for "each person" for bodily injury not enlarged to $100,000 limitation for "each accident"). Because Mayes's policy included the minimum mandated coverage designed to respond to Cassady's damages resulting from the ownership or use of Mayes's motor vehicle, American States's payment of the policy's limits does not frustrate public policy. Thus, American Fire's contention that American States's duty to defend existed after it paid Cassady the policy limits is without merit.

██ The parties do not dispute that American States paid $50,000 to settle all Cassady's personal injury claims presented to it. As part of that settlement, American States secured a release on behalf of its named insured, Mayes. The $50,000 payment exhausted American States's policy limits. We conclude that, under the unambiguous policy language and circumstances of this particular case, American States's settlement of Cassady's personal injury claim against Mayes's estate for its bodily injury policy limits terminated any obligation to defend Arnold, as an additional insured, in the Cas-

sady lawsuit. Because American States had no duty to defend Arnold, the trial court erred in granting summary judgment in favor of American Fire and in denying American States's motion for summary judgment. We, therefore, sustain points of error three and four. Because of our disposition of these points, we need not address American States's points of error one and two,[3] which mount additional challenges to the trial court's granting of American Fire's motion for summary judgment. *See* Tex.R.App. P. 90(a).

We reverse the trial court's judgment and render judgment for American States that Arnold and American Fire take nothing by their claims against American States.

---

**3.** These points of error claim that American Fire's petition does not allege ambiguity and public policy violations, which were the specific grounds on which American Fire based its motion for summary judgment. In its first point of error, American States asserts that American Fire did not plead in its petition the grounds supporting its motion for summary judgment. In its second point of error, American States asserts that the judgment entered in favor of American Fire does not conform to American Fire's pleadings.